**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

WEIZMAN FL PROPERTIES, LLC,
a Florida limited liability company,

      Plaintiff,                           CASE NO.: 1:22-cv-23362-KMW

v.

MICHAEL MARANDA, an individual,

      Defendant.

_____/

**AFFIDAVIT OF JONATHAN WEIZMAN IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT**

STATE OF NEW JERSEY      )
                                )  ss
COUNTY OF MORRIS         )

      BEFORE ME, personally appeared Jonathan Weizman, who, after being duly sworn, deposes and states:

      1.      I am over the age of eighteen (18) years of age and have personal knowledge of the matters set forth in this affidavit.

      2.      In my capacity as a Manager and a records custodian of Plaintiff, Weizman FL Properties, LLC  ("Plaintiff"), I was the person responsible for overseeing the transaction for Plaintiff's purchase of the commercial property located at 2375 N.W. 70th Avenue, Unit B8, Miami, FL 33122 from Defendant, Michael Miranda ("Defendant").

      3.      I have personal knowledge of the matters set forth in this affidavit and can testify as to same if called upon to do so.

4.      I am familiar with the identity and method of preparation of the Plaintiff's business records, and routinely rely upon those business records in the usual course of my business and the business of Plaintiff.

5.      Plaintiff's business records were made at or near the time of the events recorded.

6.      Plaintiff's business records were made by or from information transmitted by a person with knowledge of the events described or recorded.

7.      Plaintiff's business records were maintained in the ordinary course of the regularly conducted business activity of Plaintiff.

8.      It is the regular practice of Plaintiff to prepare and maintain such business records.

9.      I have reviewed the Commercial Contract (the "Contract"), the Complaint, and the Motion for Entry of Default and Default Final Default Judgment, and I am fully aware of the facts giving rise to Plaintiff's claim.

10.     This affidavit is submitted in support of Plaintiff's Motion for Entry of Final Default Judgment, and I am competent to testify to the matters set forth in this affidavit.

11.     On April 29, 2022, Plaintiff and Defendant entered into the Contract whereby Plaintiff agreed to buy and Defendant agreed to convey commercial property located at 2375 N.W. 70 Avenue, Unit B8, Miami, Florida 33122 (the "Property") for a purchase price of $525,000.00. A true and correct copy of the Contract is attached as Exhibit "1."

12.     Closing occurred on May 13, 2022.

13.     In connection with the closing, Defendant delivered, among other documents, a No Lien, Possession and Gap Affidavit (the "Affidavit"). A true and correct copy of the Affidavit is attached as Exhibit "2." In the Affidavit, Defendant represented, among other things, that Defendant had "not executed any contracts for sale affecting the Property which is currently

2

effective except for" the Contract between Plaintiff and Defendant. Defendant further represented that there were "no matters pending against" Defendant that "could give rise to a lien that would attach to the Property or would adversely affect the title to the Property or [Defendant's] ability to close on the sale of the Property . . ." Plaintiff reasonably and justifiably relied on the statements made by Defendant in the Affidavit. The statements made by Defendant in the Affidavit were false when made.

14.     Defendant also delivered to Plaintiff a Warranty Deed on the Closing Date. A true and correct copy of the Warranty Deed is attached as Exhibit "3." In the Warranty Deed, Defendant covenanted that he had lawful authority to sell and convey the Property, warranted title to the Property, and agreed to defend the title against lawful claims of other persons. Defendant did not, in fact, have lawful authority to sell and convey the Property to Plaintiff on the Closing Date.

15.     On May 13, 2022, Plaintiff wired the net sales proceeds to Defendant in the amount of $518,865.23(the "Sales Proceeds"). A partially redacted copy of the HUD-Settlement Statement wire confirmation is attached as Composite Exhibit "4."

16.     After the closing date, and after Defendant accepted the Sales Proceeds, Plaintiff, through its agent, discovered before recording the Warranty Deed that an action for specific performance had been filed against Defendant in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida and a Notice of *Lis Pendens* had been recorded in the Miami-Dade County, Florida Public Records against the Property by another purchaser (the "Prior Contract Purchaser") to whom Defendant had contracted to sell. A true and correct copy of the Complaint and docket associated with the Prior Contract Purchaser's action is attached as Composite Exhibit "5."

17.     According to the action filed by the Prior Contract Purchaser, Defendant had entered into a contract to sell the Property to the Prior Contract Purchaser on April 11, 2022 for a purchase price of $250,000.00, and with a scheduled closing date of May 2, 2022. The records filed in the action filed by the Prior Contract Purchaser make clear that on April 28, 2022, the same day that Defendant signed the Contract with Plaintiff to sell the Property for more than double the amount he was under contract for with the Prior Contract Purchaser, Defendant advised the Prior Contract Purchaser by email that "[f]or personal reasons [Defendant] cannot sell the property[.]" *Id.*

18.     On May 4, 2022, ten (10) days before the Closing Date with Plaintiff and accepting the Sales Proceeds wired by Plaintiff, the Prior Contract Purchaser filed his action and recorded a Notice of *Lis Pendens* against the Property. *Id.*

19.     Upon information and belief, Defendant was aware of the action filed by the Prior Contract Purchaser and the recording of the Notice of *Lis Pendens* prior to Defendant accepting Plaintiff's Sales Proceeds on May 13, 2022.

20.     The Prior Contract Purchaser resolved his action against Defendant through settlement, which included the conveyance of the Property to the Prior Contract Purchaser via Warranty Deed recorded on July 15, 2022, the filing of a Notice of Voluntary Dissolution of *Lis Pendens* on July 19, 2022, and the filing of a Notice of Voluntary Dismissal With Prejudice on September 27, 2022. *Id.*

21.     Plaintiff has made repeated demands on Defendant to return the Sales Proceeds.

22.     Defendant continues to wrongfully retain the Sales Proceeds.

4

23.     Defendant pocketed at least $250,000.00 from the sale of the property to the Prior Contract Purchaser, and continues to wrongfully retain Plaintiff's $518,865.23 of Sales Proceeds for a Property that he could not validly convey to Plaintiff.

24.     Plaintiff has retained the firm of Saul Ewing LLP to represent it in this action and is obligated to pay them a reasonable fee for their services. The amount of said fee will be presented by separate affidavit submitted by undersigned counsel.

25.     After discovering the action filed by the Prior Contract Purchaser, Plaintiff learned that Defendant is no stranger to the legal system and that this is not the first case where Defendant is alleged to have breached a contract, and committed fraud and conversion.

26.     On May 10, 2022, three days before Plaintiff wired the Sales Proceeds to Defendant, Defendant was sued in New York by Bitcoin mining companies alleging, among other things, that Defendant converted tens of millions of dollars' worth of Bitcoin mining equipment.       True and correct copies of the docket report and Complaint filed in *BIT INTELLIGENCE, LLC and BIT INTELLIGENCE LTD. v. Michael Maranda and Michael Maranda LLC*, Index No. 2022-749, Supreme Court, State of New York, County of Schenectady are attached as Composite Exhibit "6."

27.     In that case, after Plaintiffs repeatedly moved to compel Defendant to appear for deposition, Defendant sought to avoid a deposition by asserting his Fifth Amendment right against self-incrimination.   However, on February 3, 2024, the Court, among other things, compelled Defendant to appear for deposition on February 7, 2023, reasoning that Defendant "cannot refuse to sit for an examination before trial by asserting his Fifth Amendment rights bust must instead assert his privilege at the deposition."

28.     After entry of that Order, Defendant remotely appeared for deposition and, upon

information and belief, asserted his Fifth Amendment right against self-incrimination to virtually

every question.

**FURTHER AFFIANT SAYETH NAUGHT.**

Dated: March 9, 2023.

                                           Weizman FL Properties, LLC,
                                           a Florida limited liability company

                                         By: Jonathan Weizman
                                         Its: Manager

| | |
|---|---|
| STATE OF NEW JERSEY | ) |
| | ) ss: |
| COUNTY OF MORRIS | ) |

SWORN TO AND SUBSCRIBED before me by Jonathan Weizman, by means of ☐
physical presence or ☐ online notary this 9th day of March, 2023.

                                          Notary Public, STATE OF NEW JERSEY

                                         *Print Name*: Laurie Wright

My Commission Expires:
5/18/26

> Laurie J Wright
> NOTARY PUBLIC
> State of New Jersey
> ID # 50038612
> My Commission Expires May 18, 2026

41262256.2

# EXHIBIT "1"

**Commercial Contract**                                     FloridaRealtors®

1   **1. PARTIES AND PROPERTY:** _____ Weizman FL Properties, LLC _____ ("Buyer")

2   agrees to buy and _____ Michael Miranda _____ ("Seller")

3   agrees to sell the property at:

4   Street Address: 2375 N.W. 70 Avenue, Unit B8, Miami, Florida 33122

5   _____

6   Legal Description: Condo Unit 8, Building B, West Airport Palms Business Park Condominium, ORB 27606, Page

7   3701, Miami-Dade County, Florida Public Records

8   and the following Personal Property: All attached fixtures (including two 3 car lifts), and security system, fire system,

9   and A/C HVAC system

10  (all collectively referred to as the "Property") on the terms and conditions set forth below.

11  **2. PURCHASE PRICE:**                                    $        525,000.00

12  (a) Deposit held in escrow by: _____ The Schiffman Law Group, P.A. _____  $    10,000.00
13       ("Escrow Agent") (checks are subject to actual and final collection)

14  Escrow Agent's address: 2875 NE 191 St, #500, Aventura, FL  Phone: 305-682-1328

15  (b) Additional deposit to be made to Escrow Agent
16  ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
17  ☐ within ____ days after Effective Date _____  $ _____

18  (c) Additional deposit to be made to Escrow Agent
19  ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
20  ☐ within ____ days after Effective Date                          $ _____

21  (d) Total financing (see Paragraph 5) _____  $ _____

22  (e) Other _____  $ _____

23  (f) All deposits will be credited to the purchase price at closing.
24  Balance to close, subject to adjustments and prorations, to be paid
25  via wire transfer.                                        $        515,000.00

26  For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of
27  Buyer's written notice of acceptability.

28  **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**
29  and **Buyer** and an executed copy delivered to all parties on or before _____ April 21, 2022 _____, this offer
30  will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be
31  3 days from the date the counter offer is delivered. The **"Effective Date" of this Contract is the date on which the**
32  **last one of the Seller and Buyer has signed or initialed and delivered the offer or the final counter offer** or
33  _____ N/A _____. Calendar days will be used when computing time periods, except time periods of 5
34  days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal
35  holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next
36  business day. **Time is of the essence in this Contract.**

37  **4. CLOSING DATE AND LOCATION:**
38  (a) **Closing Date:** This transaction will be closed on _____ 30 days from Effective Date _____ (Closing Date), unless
39  specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods
40  including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-5   Rev 9/17                                            ©2017 Florida Realtors®
Serial#: 009053-400165-0555427                                         Form
                                                           Simplicity

41  on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
42  the insurance underwriting suspension is lifted.

43  **(b) Location:** Closing will take place in _____ County, Florida. (If left blank, closing will take place in the
44  county where the property is located.) Closing may be conducted by mail or electronic means.

45  **5. THIRD PARTY FINANCING:**
46  **BUYER'S OBLIGATION:** On or before _____ days (5 days if left blank) after Effective Date, **Buyer** will apply for third
47  party financing in an amount not to exceed _____% of the purchase price or $_____, with a fixed
48  interest rate not to exceed _____% per year with an initial variable interest rate not to exceed _____%, with points or
49  commitment or loan fees not to exceed _____% of the principal amount, for a term of _____ years, and amortized
50  over _____ years, with additional terms as follows:
51  _____.
52  Buyer will timely provide any and all credit, employment, financial and other information reasonably required by any
53  lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within ____ days (45 days if left
54  blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close
55  the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the mortgage
56  broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately upon
57  obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable
58  diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within ____ days (3 days if left blank)
59  deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
60  If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.
61  Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of
62  those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**
63  has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and
64  thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or
65  before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both
66  parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving
67  the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use
68  good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction
69  does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms
70  and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-
71  approval letter nor a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.

72  **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☒ statutory warranty
73  deed ☐ special warranty deed ☐ other _____, free of liens, easements and
74  encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
75  restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
76  matters to which title will be subject) N/A
77  _____:
78  provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
79  Property as _____ Automotive _____.

80  **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
81  and pay for the title search and closing services. **Seller** will, at (check one) ☒ **Seller's** ☐ **Buyer's** expense and
82  within _____ days after Effective Date or at least _____ days before Closing Date deliver to **Buyer** (check one)
83  ☐ (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
84  **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
85  price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
86  **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. ☒ (ii.) an
87  abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
88  However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed
89  insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
90  exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or

Buyer (_____) and Seller (_____)(_____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

CC-5  Rev 9/17
Serial#: 080515-200165-0389548

©2017 Florida Realtors®
Form
Simplicity

91  Buyer's closing agent together with copies of all documents recited in the prior policy and in the update. If such
92  an abstract or prior policy is not available to Seller then (i.) above will be the evidence of title.

93  (b) Title Examination: Buyer will, within 15 days from receipt of the evidence of title deliver written notice to Seller
94  of title defects. Title will be deemed acceptable to Buyer if (1) Buyer fails to deliver proper notice of defects or (2)
95  Buyer delivers proper written notice and Seller cures the defects within _____ days from receipt of the notice
96  ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
97  Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98  scheduled Closing Date. Seller may elect not to cure defects if Seller reasonably believes any defect cannot be
99  cured within the Curative Period. If the defects are not cured within the Curative Period, Buyer will have 10 days
100  from receipt of notice of Seller's inability to cure the defects to elect whether to terminate this Contract or accept
101  title subject to existing defects and close the transaction without reduction in purchase price.

102  (c) Survey: (check applicable provisions below)
103  ☒ Seller will, within __5__ days from Effective Date, deliver to Buyer copies of prior surveys,
104  plans, specifications, and engineering documents, if any, and the following documents relevant to this
105  transaction:
106  _____,
107  prepared for Seller or in Seller's possession, which show all currently existing structures. In the event this
108  transaction does not close, all documents provided by Seller will be returned to Seller within 10 days from the
109  date this Contract is terminated.
110  ☒ Buyer will, at ☐ Seller's ☐ Buyer's expense and within the time period allowed to deliver and examine
111  title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112  encroachments on the Property or that the improvements encroach on the lands of another, ☐ Buyer will
113  accept the Property with existing encroachments ☐ such encroachments will constitute a title defect to be
114  cured within the Curative Period.

115  (d) Ingress and Egress: Seller warrants that the Property presently has ingress and egress.

116  7. PROPERTY CONDITION: Seller will deliver the Property to Buyer at the time agreed in its present "as is" condition,
117  ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. Seller
118  makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119  changed since the expiration of the Due Diligence Period, Buyer may elect to terminate the Contract and receive a
120  refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121  condition existing as of the end of Due Diligence period, the cost of which is not to exceed $0.00_____ (1.5% of
122  the purchase price, if left blank). By accepting the Property "as is", Buyer waives all claims against Seller for any
123  defects in the Property. (Check (a) or (b))

124  ☐ (a) As Is: Buyer has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125  condition.

126  ☒ (b) Due Diligence Period: Buyer will, at Buyer's expense and within __15__ days from Effective Date ("Due
127  Diligence Period"), determine whether the Property is suitable, in Buyer's sole and absolute discretion. During the
128  term of this Contract, Buyer may conduct any tests, analyses, surveys and investigations ("Inspections") which
129  Buyer deems necessary to determine to Buyer's satisfaction the Property's engineering, architectural,
130  environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131  regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132  state and regional growth management and comprehensive land use plans; availability of permits, government
133  approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134  water contamination; and other inspections that Buyer deems appropriate. Buyer will deliver written notice to
135  Seller prior to the expiration of the Due Diligence Period of Buyer's determination of whether or not the Property
136  is acceptable. Buyer's failure to comply with this notice requirement will constitute acceptance of the Property in
137  its present "as is" condition. Seller grants to Buyer, its agents, contractors and assigns, the right to enter the
138  Property at any time during the term of this Contract for the purpose of conducting inspections, upon reasonable
139  notice, at a mutually agreed upon time; provided, however, that Buyer, its agents, contractors and assigns enter
140  the Property and conduct inspections at their own risk. Buyer will indemnify and hold Seller harmless from
141  losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142  liability to any person, arising from the conduct of any and all inspections or any work authorized by Buyer. Buyer
143  will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144  Seller's prior written consent. In the event this transaction does not close, (1) Buyer will repair all damages to the

Buyer_____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

©2017 Florida Realtors®
Form
Simplicity

145 Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
146 Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
147 result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
148 **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

149 **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
150 parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
151 to ensure that all Property is on the premises.

152 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
153 business conducted on the Property in the manner operated prior to Contract and will take no action that would
154 adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
155 vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted ☒ only with
156 **Buyer's** consent ☐ without **Buyer's** consent.

157 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
158 the norms where the Property is located.

159 **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
160 closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
161 mailboxes, and security systems.

162 **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
163 statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
164 recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
165 prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

166 **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
167 service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
168 service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
169 contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
170 contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
171 documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters (if
172 applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
173 **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
174 change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
175 **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
176 deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
177 appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
178 requirements of local law. **Seller** will transfer security deposits to **Buyer. Buyer** will provide the closing statement,
179 mortgages and notes, security agreements, and financing statements.

180 **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
181 payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
182 premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
183 amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
184 allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
185 of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

186 **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
187 will be paid by **Seller.** If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
188 pay all installments due and payable on or before the Closing Date, with any installment for any period extending
189 beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
190 Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
191 Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
192 completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
193 estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
194 does not apply to condominium association special assessments.

195 **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
196 **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
197 complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply

**Buyer** (_____) and **Seller** (_____) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

©2017 Florida Realtors®
🏠 Form
📕 Simplicity

with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the requirement.

**10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive, deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs in favor of the prevailing party.

**11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

**12. FORCE MAJEURE: Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

**13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit will be returned in accordance with applicable Florida Laws and regulations.

**14. DEFAULT:**

**(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the brokerage fee.

**(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1) retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1) terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without waiving any remedy for **Buyer's** default.

**15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable attorneys' fees, costs, and expenses.

**16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice, document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker) representing a party will be as effective as if given by or delivered to that party.

©2017 Florida Realtors®
Form Simplicity

**17. DISCLOSURES:**

(a) **Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

(b) **Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

(c) **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

(d) **Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**18. RISK OF LOSS:**

(a) If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

(b) If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☒ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer," "Seller"** and "Broker" may be singular or plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

(a) **Seller's Broker:** _____ ,
　　　　　　　　　　　　　　(Company Name)　　　　　　　　　　　　　　　　　　(Licensee)

_____ ,
(Address, Telephone, Fax, E-mail)

who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

(b) **Buyer's Broker:** _____ ,
　　　　　　　　　　　　　　(Company Name)　　　　　　　　　　　　　　　　　　(Licensee)

_____ ,
(Address, Telephone, Fax, E-mail)

**Buyer** (_____) and **Seller** (_____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-5  Rev 8/17
Serial#: 080972-000165-0390876

©2017 Florida Realtors®

Form
Simplicity

302 who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
303 ☐ Seller's Broker ☐ Seller ☐ Buyer ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
304
305 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
306 inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
307 indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
308 reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
309 inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
310 Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
311 services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
312 expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

313 **22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
314 this Contract):
315 ☐ (A) Arbitration                           ☐ (E) Seller Warranty                        ☐ (I) Existing Mortgage
316 ☐ (B) Section 1031 Exchange                 ☐ (F) Coastal Construction Control Li ☐ (J) Buyer's Attorney Approval
317 ☐ (C) Property Inspection and Repair        ☐ (G) Flood Area Hazard Zone              ☐ (K) Seller's Attorney Approval
318 ☐ (D) Seller Representations                ☐ (H) Seller Financing                    ☐ Other ___Condominium Rider___

319 **23. ADDITIONAL TERMS:**
320 Seller, at Seller's expense, shall close all open/expired permits and obtain releases of all municipal violations and liens
321 prior to the closing hereof.
322
323 The Property is located within the West Airport Palms Business Park Condominium (the "Condominium") and the rights
324 and obligations of the parties hereto as subject to Condominium's constituent documents. To the extent said
325 documents require the approval by the condominium association of the purchase contemplated hereunder, Buyer shall
326 make application for same within 5 business days of the Effective Date hereof, and Buyer's obligation to close
327 hereunder is contingent upon the issuance of such approval by the condominium association. Seller hereby represents
328 to Buyer that, to the best of Seller's knowledge there are no certified, confirmed and/or special assessments by the
329 condominium association pending at this time.
330
331
332
333
334
335
336
337
338
339
340
341

342 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
343 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
344 **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
345 **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
346 **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
347 **REPORTING REQUIREMENTS ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**

Buyer (____) and Seller (____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

348 **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
349 **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
350 **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
351 **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
352 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
353 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

354 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357 to do so.

358 _____ Date: __4/29/22__
(Signature of Buyer

359 _____ Tax ID No.: _____
(Typed or Printed Name of Buyer)

360 Title: _____ Telephone: _____

361 _____ Date: _____
(Signature of Buyer

362 _____ Tax ID No.: _____
(Typed or Printed Name of Buyer)

363 Title: _____ Telephone: _____

364 Buyer's Address for purpose of notice _____

365 Facsimile: _____ Email: _____

366 _____ Date: __4/28/22__
(Signature of Seller)

367 __M Maranda__ Tax ID No.: _____
(Typed or Printed Name of Seller)

368 Title: _____ Telephone: _____

369 _____ Date: _____
(Signature of Seller)

370 _____ Tax ID No.: _____
(Typed or Printed Name of Seller)

371 Title: _____ Telephone: _____

372 Seller's Address for purpose of notice: _____

373 Facsimile: _____ Email: _____

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Buyer_____ ) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5 Rev 9/17
Serial#: 080515-200165-0389546

©2017 Florida Realtors®
Form Simplicity

# EXHIBIT "2"

# NO LIEN, POSSESSION AND GAP AFFIDAVIT

BEFORE ME, the undersigned authority personally appeared Michael Miranda ("**Affiant**"), who upon being duly cautioned and sworn, deposes and states as follows:

1.      Affiant is the owner ("**Owner**") in fee simple of the property legally described in **Exhibit A**, attached hereto and incorporated herein by this reference (the "**Property**").

2.      This Affidavit is given so that title to the Property may be insured without any exceptions for the title search "gap," construction liens or possession.

3.      Owner has possession of the Property and there is no other person or entity in possession or who has any right of ownership to the Property.  Owner's title to, and possession and enjoyment of, the property has been open, notorious, peaceable and undisturbed, and has never been disputed nor questioned.

4.      Within the past ninety (90) days there have been no improvements, alterations or repairs to the Property for which the costs thereof remain unpaid, and within the past ninety (90) days there have been no claims for labor, services or material furnished for repairing or improving the Property that remain unpaid.

5.      Owner has made no additional improvements to the Property and has received no notice of (proposed) back assessments from Property Appraiser's Office or bill for back assessments from Tax Collector since the issuance of the last tax bill.

6.      Owner has not executed any contracts for sale affecting the Property which is currently effective except for the Purchase and Sale Agreement dated April 29, 2022, by and among Owner, and Weizman FL Properties, LLC.

7.      There are no matters pending against Owner in any state or Federal court or other governmental body of which Owner is a party, including, but not limited to, proceedings in bankruptcy, receivership or insolvency, which could give rise to a lien that would attach to the Property or would adversely affect the title to the Property or Owner's ability to close on the sale of the Property between April 18, 2022, the date of the title commitment, and the recording of the deed to be insured, and that Owner has not executed and will not execute any instrument that would adversely affect the title or interest to be insured.

8.      That, the Property is free and clear of all liens, taxes, and mortgages, encumbrances and claims of every kind, nature and description whatsoever, except for mortgage or mortgages, if any, described in the deed given between the parties named herein, and except for real estate and personal property taxes for the current and subsequent years, except as otherwise indicated on the Title Commitment.

9.      Owner agrees that in the event the current real estate or personal property taxes vary in amount from the figures used in making the prorations used in closing the transfer and conveyance of the above described property to said buyers, then a new  proration and a correct and proper adjustment will be made  upon demand from either party.

10.     There has been no disputes concerning the boundary lines of the property, and the operation of any buildings on said property has been in compliance with the applicable building codes, ordinances and statutes.

11.     There are no unrecorded easements, claims of easements or rights-of-way affecting all or any portion of the property.

12.     That this Affidavit is made for the purpose of inducing (i) Weizman FL Properties, LLC (hereinafter the "Purchaser(s)") to purchase the Property from Owner; and (ii) WFG National Title Insurance Company (the "Title Insurer") to issue a commitment or commitments and/or policy or policies insuring the Purchaser(s) interest in the Property; and (iii) is made under penalties of perjury.  Affiant does hereby agree to indemnify and hold harmless Title Insurer from any and all loses, costs or damages, including attorney's fees, which the Title Insurer may incur, or become liable for, under its Insured Closing Service Letter, commitment or commitments, and/or policy or policies, either directly or indirectly, due to any misstatement contained herein.  Affiant agrees to immediately execute and deliver any revised or corrective documents as may be deemed necessary to confirm marketable title to the Property.

**Under penalty of perjury**, I declare that I have read the foregoing Affidavit and that the facts stated in it are true.

_____
Michael Miranda

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me by means of (X) physical presence or ( ) online notarization this 13th day of May, 2022, by Michael Miranda.

_____
Signature of Notary Public
Print, Type/Stamp Name of Notary

Personally Known:_____ OR Produced Identification: ✓
Type of Identification
Produced:_____ NY  DRIVER'S  LICENSE

ADAM R. SCHIFFMAN
Notary Public - State of Florida
Commission # HH 045018
My Comm. Expires Nov 12, 2024
Bonded through National Notary Assn.

NO LIEN, POSSESSION AND GAP AFFIDAVIT

File No.: 22.;5910257

# EXHIBIT A
## LEGAL DESCRIPTION

Property Address:     **2375 Northwest 70th Avenue**
**Unit 8, Building B**
**Miami, FL 33122**

CONDOMINIUM UNIT 8, BUILDING B, OF WEST AIRPORT PALMS BUSINESS PARK, A
CONDOMINIUM, ACCORDING TO THE DECLARATION OF-CONDOMINIUM THEREOF, AS
RECORDED IN OFFICIAL RECORDS BOOK 27606, PAGE 3701, AND ALL AMENDMENTS THEREOF,
OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA; TOGETHER WITH AN
UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO.

# EXHIBIT "3"

Prepared by and return to:
Adam R. Schiffman, Esquire
The Schiffman Law Group, P.A.
2875 Northeast 191st Street, Suite 500
Aventura, FL 33180
(786) 200-1328
File No 22.;5910257

Parcel Identification No 30-3035-021-0220

[Space Above This Line For Recording Data]

# WARRANTY DEED

(STATUTORY FORM – SECTION 689.02, F.S.)

This indenture made the **13th day of May, 2022** between **Michael Miranda, a single man,**\* whose post office address is **122 Fairfield Drive, Holbrook, NY 11741**, of the County of Suffolk, State of New York, Grantor, to **Weizman FL Properties, LLC, a Florida Limited Liability Company**, whose post office address is **28 Lake Drive, Mountain Lakes, NJ 07046,** of the County of Morris, State of New Jersey, Grantee:   \*a/k/a Michael Maranada

**Witnesseth**, that said Grantor, for and in consideration of the sum of TEN DOLLARS (U.S.$10.00) and other good and valuable considerations to said Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said Grantee, and Grantee's heirs and assigns forever, the following described land, situate, lying and being in Miami-Dade, Florida, to-wit:

**CONDOMINIUM UNIT 8, BUILDING B, OF WEST AIRPORT PALMS BUSINESS PARK, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF-CONDOMINIUM THEREOF, AS RECORDED IN OFFICIAL RECORDS BOOK 27606, PAGE 3701, AND ALL AMENDMENTS THEREOF, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA; TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO.**

**Together with** all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**Subject to** taxes for 2022 and subsequent years, not yet due and payable; covenants, restrictions, easements, reservations and limitations of record, if any, which Grantor does not seek to reimpose.

**TO HAVE AND TO HOLD** the same in fee simple forever.

**And** Grantor hereby covenants with the Grantee that the Grantor is lawfully seized of said land in fee simple, that Grantor has good right and lawful authority to sell and convey said land and that the Grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever.

**In Witness Whereof**, Grantor has hereunto set Grantor's hand and seal the day and year first above written.

*Signed and delivered in our presence:*

Witness (sign above)
Print Name:  ADAM R. SCHIFFMAN

**Michael Miranda,** a/k/a Michael Maranda

Witness (sign above)
Print Name:  CARON Schiffman

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me by means of (✓) physical presence or ( ) online notarization this 13th day of May, 2022, by Michael Miranda, a/k/a Michael Maranda.

_____

Signature of Notary Public
Print, Type/Stamp Name of Notary

Personally Known:_____ OR Produced Identification:_____✓_____
Type of Identification
Produced:_____ NY DRIVER'S LICENSE



ADAM R. SCHIFFMAN
Notary Public - State of Florida
Commission # HH 045018
My Comm. Expires Nov 12, 2024
Bonded through National Notary Assn.

# COMPOSITE EXHIBIT "4"

A. Settlement Statement (HUD-1)

| B. Type of Loan | | | | | | |
|---|---|---|---|---|---|---|
| 1. ☐ FHA  2. ☐ RHS  3. ☐ Conv. Unins.<br>4. ☐ VA  5. ☐ Conv Ins. | | | 6. File No.<br>22.;5910257 | 7. Loan No. | 8. Mortgage Insurance Case No. | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower:<br>Weizman FL Properties, LLC<br>28 Lake Drive<br>Mountain Lakes, NJ 07046 | E. Name & Address of Seller:<br>Michael Miranda<br>122 Fairfield Drive<br>Holbrook, NY 11741 | F. Name & Address of Lender: |
|---|---|---|
| G. Property Location:<br>2375 Northwest 70th Avenue<br>Unit 8, Building B<br>Miami, FL 33122 | H. Settlement Agent:<br>The Schiffman Law Group, P.A.<br><br>Place of Settlement:<br>2875 Northeast 191st Street 500<br>Aventura, FL 33180 | I. Settlement Date:<br>05/13/2022<br>Funding Date:<br>05/13/2022<br>Disbursement Date:<br>05/13/2022 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | $525,000.00 | 401. Contract sales price | $525,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $4,512.01 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. May Condo Maintenance 05/13/2022 to 05/31/2022 | $186.01 | 409. May Condo Maintenance 05/13/2022 to 05/31/2022 | $186.01 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | $529,698.02 | **420. Gross Amount Due to Seller** | $525,186.01 |
| **200. Amount Paid by or in Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | $4,738.50 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of First Mortgage | |
| 205. | | 505. Payoff of Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes 01/01/2022 to 05/13/2022 | $1,582.28 | 511. County Taxes 01/01/2022 to 05/13/2022 | $1,582.28 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | $1,582.28 | **520. Total Reduction Amount Due Seller** | $6,320.78 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $529,698.02 | 601. Gross amount due to seller (line 420) | $525,186.01 |
| 302. Less amounts paid by/for borrower (line 220) | $1,582.28 | 602. Less reductions in amounts due seller (line 520) | $6,320.78 |
| 303. Cash ☒ From ☐ To Borrower | $528,115.74 | 603. Cash ☒ To ☐ From Seller | $518,865.23 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

**L. Settlement Charges**

| | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Real Estate Broker Fees | | | |
| Division of commission (line 700) as follows : | | | |
| 701. $ | | | |
| 702. $ | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| 800. Items Payable in Connection with Loan | | | |
| 801. Our origination charge | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | |
| 803. Your adjusted origination charges | (from GFE #A) | | |
| 804. Appraisal fee | (from GFE #3) | | |
| 805. Credit report | (from GFE #3) | | |
| 806. Tax service | (from GFE #3) | | |
| 807. Flood certification | (from GFE #3) | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Daily interest charges from 05/13/2022 to 06/01/2022 | (from GFE #10) | | |
| 902. Mortgage insurance premium | (from GFE #3) | | |
| 903. Homeowner's insurance | (from GFE #11) | | |
| 904. | | | |
| 1000. Reserves Deposited with Lender | | | |
| 1001. Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. Homeowner's insurance | | | |
| 1003. Mortgage insurance | | | |
| 1004. Property taxes | | | |
| 1005. | | | |
| 1006. | | | |
| 1007. Aggregate Adjustment $0.00 | | | |
| 1100. Title Charges | | | |
| 1101. Title services and lender's title insurance | (from GFE #4) | $595.00 | |
| 1102. Settlement or closing fee to The Schiffman Law Group, P.A. $595.00 | | | |
| 1103. Owner's title insurance to WFG National Title Insurance Company | (from GFE #5) | $2,700.00 | |
| 1104. Lender's title insurance to WFG National Title Insurance Company | | | |
| 1105. Lender's title policy limit $ | | | |
| 1106. Owner's title policy limit $525,000.00 | | | |
| 1107. Agent's portion of the total title insurance premium to The Schiffman Law Group, P.A. $1,890.00 | | | |
| 1108. Underwriter's portion of the total title insurance premium to WFG National Title Insurance Company $810.00 | | | |
| 1109. Buyer's Attorney's Fees to The Schiffman Law Group, P.A. | | $750.00 | |
| 1110. Seller Document Preparation to The Schiffman Law Group, P.A. | | | $595.00 |
| 1111. Title Exam Fee to WFG National Title Insurance Company | | | $350.00 |
| 1112. Lien Search Fee Reimbursement to The Schiffman Law Group, P.A. | | | $305.00 |
| 1113. Condo Estoppel Fee Reimbursement to The Schiffman Law Group, P.A. | | | $250.00 |
| 1114. Title - Courier, copying, wire fees, etc. to The Schiffman Law Group, P.A. | | $95.00 | $65.00 |
| 1115. Title - Archival Storage Fee to The Schiffman Law Group, P.A. | | $30.00 | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Government recording charges | (from GFE #7) | $32.00 | |
| 1202. Deed $32.00 Mortgage $ Release $ to Official Records Department | | | |
| 1203. Transfer taxes | (from GFE #8) | | |
| 1204. City/County tax/stamps Deed $ Mortgage $ | | | |
| 1205. State tax/stamps Deed $3,150.00 Mortgage $ to Official Records Department | | | $3,150.00 |
| 1206. Record Non-Identity Affidavit to Official Records Department | | | $23.50 |
| 1300. Additional Settlement Charges | | | |
| 1301. Required services that you can shop for | (from GFE #6) | | |
| 1302. June Condo Maintenance to West Airport Palms Business Park Condo Assn | | $310.01 | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | $4,512.01 | $4,738.50 |

Comparison of Good Faith Estimate (GFE) and HUD-1 Charges

| Charges That Cannot Increase | HUD-1 Line Number | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Our origination charge | #801 | | |
| Your credit or charge (points) for the specific interest rate chosen | #802 | | |
| Your adjusted origination charges | #803 | $0.00 | |
| Transfer taxes | #1203 | | |

| Charges That In Total Cannot Increase More Than 10% | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | 1201 | | $32.00 |
| Buyer's Attorney's Fees | 1109 | | $750.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total | | | $782.00 |
| Increase between GFE and HUD-1 Charges | | | % |

| Charges That Can Change | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | 1001 | | |
| Daily interest charges | 901 | | |
| Homeowner's insurance | 903 | | |
| June Condo Maintenance | 1302 | | $310.01 |
| Title services and lender's title insurance | 1101 | | $595.00 |
| Owner's title insurance | 1103 | | $2,700.00 |

## Loan Terms

| | |
|---|---|
| Your initial loan amount is | |
| Your loan term is | |
| Your initial interest rate is | |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | includes<br><br>[X] Principal<br><br>[X] Interest<br><br>[ ] Mortgage Insurance |
| Can your interest rate rise? | [X] No,  [ ] Yes,  it can rise to a maximum of           . The first change will be on<br><br>and can change again every           months after           . Every change date, your interest rate can<br>increase or decrease by           . Over the life of the loan, your interest rate is guaranteed to never be<br>lower than           or higher than           . |
| Even if you make payments on time, can your loan balance rise? | [X] No,  [ ] Yes,  it can rise to a maximum of |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | [X] No,  [ ] Yes,  the first increase can be on           and the monthly amount owed can rise to<br>           . The maximum it can ever rise to is |
| Does your loan have a prepayment penalty? | [X] No,  [ ] Yes,  your maximum prepayment penalty is |
| Does your loan have a balloon payment? | [X] No,  [ ] Yes,  you have a balloon payment of           due in           years on |
| Total monthly amount owed including escrow account payments | [X] You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself.<br><br>[ ] You have an additional monthly escrow payment of  that results in a total initial monthly amount owed of . This includes principal, interest, any mortgage insurance and any items checked below:<br><br>[ ] Property taxes       [ ] Homeowner's insurance<br>[ ] Flood insurance      [ ]<br>[ ]                      [ ] |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

See signature addendum

**Signature Addendum**

DocuSigned by:
Weizman FL Properties, LLC, a Florida Limited Liability Company

By _____ 5/12/2022

Jonathan Weizman, Manager                    Date

Michael Miranda          5/13/22
                            Date

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

Settlement Agent                                 5/13/22
                                                    Date

## ADAM SCHIFFMAN

| | |
|---|---|
| **From:** | OCEAN BANK <Wires_Notification@oceanbank.com> |
| **Sent:** | Friday, May 13, 2022 3:13 PM |
| **To:** | ADAM SCHIFFMAN |
| **Subject:** | Funds Transfer Out  $518,865.23 XXXXX90205 THE SCHIFFMAN LAW GROUP, P.A. |

DO NOT FORWARD.  FOR INTERNAL USE ONLY!
The purpose of this email is to inform you of a recent wire transfer activity for the account at subject with the following details:


THE SCHIFFMAN LAW GROUP, P.A.

WE DEBIT YOUR ACCOUNT        0205 FOR $518,865.23 ON 05/13/22 REPRESENTING $518,865.23 PLUS A FEE OF $25.00 (charged to Fee Account)
WIRETYPE: FEDWIRE-OUT   REFERENCE NO.      4833
PAY TO BANK: COASTAL COMM BK WA, 125109019, FED NO-20220513MMQFMPO7000430

ORIGINATOR: THE SCHIFFMAN LAW GROUP, P.A.
        2875 NE 191ST ST STE 500
        AVENTURA FL 33180 USA

ORIGINATOR BANK: OCEAN BANK
        780 N.W. 42ND AVE.
        MIAMI, FL  33126

BENEFICIARY ACC:        7878
BENEFICIARY: MICHAEL MIRANDA LLC
        122 FAIRFIELD DRIVE
        HOLBROOK,NY,11741          US

REF-202234833        413721

SELLER NET CLOSING PROCEEDS FOR
2375 NW 70 AVENUE  UNIT B8
MIAMI  FL 33122

Please do not reply to this email message.  If you have questions in regards to this message, kindly contact the Wire Transfer Department.
Thank you

*******************************************************************************************************

This e-mail and its attachments are intended for the above named recipient(s) only and may contain confidential, privileged, and/or proprietary information.  If you are not the intended recipient you must (1) take no action based on them and may not disclose, copy or distribute their content; (2) reply to this e-mail notifying the sender of the error; and, (3) delete it and its attachments from your system. This e-mail and its attachments may contain private views of the author and do not constitute a disclosure or commitment by Ocean Bank unless specifically stated. Although we have taken steps to ensure that this e-mail and its attachments are free from any virus, we advise that the recipient ensure they are actually virus free.

## THE SCHIFFMAN LAW GROUP, P.A.
**TURNBERRY PLAZA ● SUITE 500**
**2875 NORTHEAST 191 STREET**
**AVENTURA, FLORIDA 33180**
**TELEPHONE (305) 933-2677**
**FAX (305) 682-0063**

## *DISBURSEMENT INSTRUCTIONS*

FILE NO.:        22.5910257
DATE:           May 13, 2022
BUYER(S):       Weizman FL Properties, LLC, a Florida limited liability company
SELLER(S):      Michael Miranda
PROPERTY
ADDRESS:        2375 N.W. 70th Avenue, Unit B8, Miami, Florida 33122

The Schiffman Law Group, P.A. (Closing Agent) is hereby authorized to disburse the net closing proceeds due Seller(s) as follows:

   X    Wire proceeds to the account described in the information below.

Bank Name:          BlueVine

Bank City/State:    Redwood City, CA

Routing Number:     ████9019

Account Number:     ████7878

Name on Account:    Michael Miranda LLC

The Schiffman Law Group, P.A. is hereby released and held harmless by Seller(s) for disbursing the net closing proceeds due Seller(s) in accordance with these instructions.

By:_____
**Michael Miranda**

**STATE OF FLORIDA**
**COUNTY OF MIAMI-DADE**

The foregoing instrument was acknowledged before me this 13th day of May, 2022, by means of ☑ physical presence or ☐ online notarization, by MICHAEL MIRANDA, who produced NY DRIVERS LICENSE as identification.

_____
**Printed Name:**

**[AFFIX NOTARY SEAL]**

ADAM R. SCHIFFMAN
Notary Public - State of Florida
Commission # HH 045018
My Comm. Expires Nov 12, 2024
Bonded through National Notary Assn.

## ADAM SCHIFFMAN

**From:**          Michael Maranda <michael@michaelmarandallc.com>
**Sent:**          Wednesday, May 11, 2022 6:13 PM
**To:**            ADAM SCHIFFMAN
**Cc:**            Jonathan Weizman
**Subject:**       Re: Consent form - West Airport Palms Business Park Condo
**Attachments:**   Weizman_001.pdf

Hello Adam,

This looks good wire info is attached.

Ty Mike





### bluevine bank info

Michael Maranda LLC
38 oaklawn avenue
Farmingville NY 11738

Bank name: Bluevine
Bank address: 410 Warren st suite 300
Redwood City, CA 94063

Account #: ████████7878
Routing #:████9019
Account Name: Michael Maranda LLC

--
*Anne*
Finance Department
*603-210-4534*

1

## ADAM SCHIFFMAN

| | |
|---|---|
| **From:** | OCEAN BANK <Wires_Notification@oceanbank.com> |
| **Sent:** | Thursday, May 12, 2022 11:17 AM |
| **To:** | ADAM SCHIFFMAN |
| **Subject:** | Funds Transfer Inc  $529,119.72 ▮▮▮▮0205 THE SCHIFFMAN LAW GROUP, P.A. ESCRO |

DO NOT FORWARD.  FOR INTERNAL USE ONLY!
The purpose of this email is to inform you of a recent wire transfer activity for the account at subject with the following details:


THE SCHIFFMAN LAW GROUP, P.A.

WE CREDIT YOUR ACCOUNT ▮▮▮▮0205 FOR $529,119.72 ON 05/12/22 REPRESENTING $529,119.72 LESS
CORRESPONDENT FEE OF $10.00 (charged to Fee Account)
WIRETYPE: FEDWIRE-IN   REFERENCE NO. 220512IO7000176
RECEIVED FROM BANK: JPMORGAN CHASE    , 021000021, FED NO-20220512B1QGC07C008769 , OMAD-
20220512MMQFMPO700017605121034FT03

ORIGINATOR: C COLLECTION MT LLC
        28 LAKE DRIVE
        MOUNTAIN LAKES NJ 07046-1342
        USA

ORIGINATOR BANK: SANFORD C BERNSTEIN & CO LLC
        CONCENTRATION ACCT
        501 COMMERCE ST
        NASHVILLE TN 37203-6039 US

BENEFICIARY ACC: ▮▮▮▮0205
BENEFICIARY: THE SCHIFFMAN LAW GROUP, P.A. ESCRO
        THE SCHIFFMAN LAW GROUP, P.A. ESCRO

REF-220512IO7000176   3424400132JO

Please do not reply to this email message.  If you have questions in regards to this message, kindly contact the Wire
Transfer Department.
Thank you

*****************************************************************************************************
This e-mail and its attachments are intended for the above named recipient(s) only and may contain confidential,
privileged, and/or proprietary information.  If you are not the intended recipient you must (1) take no action based on
them and may not disclose, copy or distribute their content; (2) reply to this e-mail notifying the sender of the error;
and, (3) delete it and its attachments from your system. This e-mail and its attachments may contain private views of the
author and do not constitute a disclosure or commitment by Ocean Bank unless specifically stated. Although we have
taken steps to ensure that this e-mail and its attachments are free from any virus, we advise that the recipient ensure
they are actually virus free.
*****************************************************************************************************
**

# COMPOSITE

# EXHIBIT "5"

## IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT OF FLORIDA, IN AND FOR MIAMI-DADE COUNTY

### CASE NO.: _____

ARMAND MEYARA,
      Plaintiff,
                vs.
MICHAEL MARANDA,
      Defendant.
_____/

### COMPLAINT

Plaintiff, ARMAND MEYARA, by and through their undersigned counsel, sue Defendant, MICHAEL MARANDA, and allege:

1. This is an action for specific performance of a contract to convey real property in Miami-Dade County, Florida.

2. Plaintiff, ARMAND MEYARA, is an individual, over the age of eighteen, a resident of Miami-Dade County, is not in the military, and is otherwise *sui juris*.

3. On information and belief, Defendant, MICHAEL MARANDA, is an individual, over the age of eighteen, a resident of Miami-Dade County, is not in the military, and is otherwise *sui juris*.

4. On April 11, 2022, ARMAND MEYARA entered into a written contract with Defendant, MICHAEL MARANDA, to purchase the real property with the street address of 2375 NW 70th Avenue, Unit 8, Bldg. B, Miami, FL 33122. A copy of the Contract is attached hereto as Exhibit "A" and incorporated herein.

5. On April 28, 2022, Defendant, MICHAEL MARANDA, wrongfully, and without cause cancelled the contract. A copy of the email is attached hereto as Exhibit "B" and incorporated herein.

1

6. Plaintiff has remained ready, willing, and able to close and attempted to tender the purchase price to Defendant and requested a conveyance of the real property described in the contract.

7. Plaintiff has made several efforts to close; however, the Defendant has refused to close and is only impediment to closing.  A copy of an email reflecting Defendant's impediment to closing is attached hereto as Exhibit "C" and incorporated herein.

8. Defendant refused to accept the tender or to make the conveyance.

9. Plaintiff offers to pay the purchase price.

10. Plaintiff has retained the undersigned law firm and agreed to pay it a reasonable fee for legal services and costs.

11. Plaintiff is entitled to specific performance pursuant to paragraph 14(a) of the Contract.

12. Plaintiff is entitled to attorneys' fees pursuant to paragraph 15 of the Contract.

WHEREFORE, Plaintiff demand a judgment that Defendant, MICHAEL MARANDA, be required to perform pursuant to the contract and for damages.

Respectfully Submitted,

SELTZER MAYBERG LLC
Attorneys for Plaintiffs
10750 NW 6th Court
Miami, FL 33168
Telephone: (305) 444-1565
Facsimile: (305) 444-1665

By: _s/ MMM._____
Menachem M. Mayberg
Florida Bar No: 0596744
Email: menachem@smfirm.com

2

# EXHIBIT

# A

DocuSign Envelope ID: 37134994-52D3-4280-A3F9-760E0DA681AD

**Commercial Contract**

BRICKELL
BROKERS
REAL ESTATE

1. **PARTIES AND PROPERTY:** _____ Armand Meyara _____ ("Buyer")

agrees to buy and _____ Michael Maranda _____ ("Seller")

agrees to sell the property at:

Street Address: 2375 NW 70 AVE. UNIT: 8 BLDG B  MIAMI, FL 33122 _____

_____

Legal Description: Folio: 30-3035-021-0220 _____

SUB-DIVISION: WEST AIRPORT PALMS BUSN PK CONDO _____

and the following Personal Property: Please see "Addendum to Contract" _____

_____

(all collectively referred to as the "Property") on the terms and conditions set forth below.

2. **PURCHASE PRICE:** $ _____ 250,000.00

(a) Deposit held in escrow by: _____ Brickell Brokers Corp. _____ $ _____ 20,000.00
("Escrow Agent") (checks are subject to actual and final collection)

Escrow Agent's address: 1390 Brickell Ave. #420 Miami, FL  Phone: 305-438-7777

(b) Additional deposit to be made to Escrow Agent
☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
☐ within ____ days after Effective Date _____ $ _____

(c) Additional deposit to be made to Escrow Agent
☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
☐ within ____ days after Effective Date _____ $ _____

(d) Total financing (see Paragraph 5) _____ N/A _____ $ _____

(e) Other _____ $ _____

(f) All deposits will be credited to the purchase price at closing.
Balance to close, subject to adjustments and prorations, to be paid
via wire transfer. $ _____ 230,000.00

For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of Buyer's written notice of acceptability.

3. **TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller** and **Buyer** and an executed copy delivered to all parties on or before _____ April 11, 2022 _____, this offer will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be 3 days from the date the counter offer is delivered. **The "Effective Date" of this Contract is the date on which the last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer** or _____ April 11, 2022 _____. Calendar days will be used when computing time periods, except time periods of 5 days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next business day. **Time is of the essence in this Contract.**

4. **CLOSING DATE AND LOCATION:**
(a) **Closing Date:** This transaction will be closed on _____ May 2, 2022 _____ (Closing Date), unless specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

41 on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
42 the insurance underwriting suspension is lifted.

43 **(b) Location:** Closing will take place in _____N/A_____ County, Florida. (If left blank, closing will take place in the
44 county where the property is located.) Closing may be conducted by mail or electronic means.

45 **5. THIRD PARTY FINANCING:**
46 **BUYER'S OBLIGATION:** On or before __N/A__ days (5 days if left blank) after Effective Date, **Buyer** will apply for third
47 party financing in an amount not to exceed ___N/A__% of the purchase price or $_____, with a fixed
48 interest rate not to exceed ___N/A__% per year with an initial variable interest rate not to exceed _____%, with points or
49 commitment or loan fees not to exceed ____N/A__% of the principal amount, for a term of __N/A__ years, and amortized
50 over __N/A__ years, with additional terms as follows:
51 _____.
52 **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
53 lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within ____ days (45 days if left
54 blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close
55 the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the mortgage
56 broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately upon
57 obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable
58 diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within __N/A__ days (3 days if left blank)
59 deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
60 If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.
61 Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of
62 those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**
63 has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and
64 thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or
65 before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both
66 parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving
67 the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use
68 good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction
69 does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms
70 and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-
71 approval letter nor a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.

72 **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by [x] statutory warranty
73 deed [ ] special warranty deed [ ] other _____, free of liens, easements and
74 encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
75 restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
76 matters to which title will be subject) _____
77 _____;
78 provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
79 Property as _____.

80 **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
81 and pay for the title search and closing services. **Seller** will, at (check one) [ ] **Seller's** [x] **Buyer's** expense and
82 within __30__ days after Effective Date or at least _____ days before Closing Date deliver to **Buyer** (check one)
83 [ ] (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
84 **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
85 price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
86 **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. [x] (ii.) an
87 abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
88 However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed
89 insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
90 exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or

**Buyer** (____) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

91   **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such
92   an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of title.

93   **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
94   of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2)
95   **Buyer** delivers proper written notice and **Seller** cures the defects within ___15___ days from receipt of the notice
96   ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
97   Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98   scheduled Closing Date. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be
99   cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have 10 days
100  from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or accept
101  title subject to existing defects and close the transaction without reduction in purchase price.

102  **(c) Survey:** (check applicable provisions below)
103  [x] **Seller** will, within ___15___ days from Effective Date, deliver to **Buyer** copies of prior surveys,
104  plans, specifications, and engineering documents, if any, and the following documents relevant to this
105  transaction:
106  _____,
107  prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
108  transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
109  date this Contract is terminated.
110  [ ] **Buyer** will, at [ ] **Seller's** [ ] **Buyer's** expense and within the time period allowed to deliver and examine
111  title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112  encroachments on the Property or that the improvements encroach on the lands of another, [ ] **Buyer** will
113  accept the Property with existing encroachments [ ] such encroachments will constitute a title defect to be
114  cured within the Curative Period.

115  **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

116  **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition,
117  ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller**
118  makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119  changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and receive a
120  refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121  condition existing as of the end of Due Diligence period, the cost of which is not to exceed $_____ (1.5% of
122  the purchase price, if left blank). By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any
123  defects in the Property. (Check **(a)** or **(b)**)

124  [ ] **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125  condition.

126  [x] **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within ___15___ days from Effective Date ("Due
127  Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion. During the
128  term of this Contract, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which
129  **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural,
130  environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131  regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132  state and regional growth management and comprehensive land use plans; availability of permits, government
133  approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134  water contamination; and other inspections that **Buyer** deems appropriate. **Buyer** will deliver written notice to
135  **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property
136  is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property in
137  its present "as is" condition. **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the
138  Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
139  notice, at a mutually agreed upon time; provided, however, that **Buyer**, its agents, contractors and assigns enter
140  the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from
141  losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142  liability to any person, arising from the conduct of any and all inspections or any work authorized by **Buyer**. **Buyer**
143  will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144  **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the

Buyer (___) (____) and Seller (___) (_____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

Form Simplicity

145  Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
146  Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
147  result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
148  **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

149  **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
150  parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
151  to ensure that all Property is on the premises.

152  **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
153  business conducted on the Property in the manner operated prior to Contract and will take no action that would
154  adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
155  vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted ☒ only with
156  **Buyer's** consent ☐ without **Buyer's** consent.

157  **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
158  the norms where the Property is located.
159  **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
160  closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
161  mailboxes, and security systems.

162  **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
163  statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
164  recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
165  prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

166  **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
167  service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
168  service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
169  contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
170  contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
171  documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters (if
172  applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
173  **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
174  change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
175  **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
176  deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
177  appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
178  requirements of local law. **Seller** will transfer security deposits to **Buyer**. **Buyer** will provide the closing statement,
179  mortgages and notes, security agreements, and financing statements.

180  **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
181  payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
182  premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
183  amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
184  allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
185  of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

186  **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
187  will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
188  pay all installments due and payable on or before the Closing Date, with any installment for any period extending
189  beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
190  Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
191  Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
192  completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
193  estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
194  does not apply to condominium association special assessments.

195  **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
196  **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
197  complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

198 with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or
199 Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
200 withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
201 requirement.

202 **10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive,
203 deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the
204 terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to
205 **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent
206 has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed
207 items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator
208 determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over
209 the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all
210 liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate
211 broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items
212 or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs
213 incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs
214 in favor of the prevailing party.

215 **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
216 default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
217 complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after
218 delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

219 **12. FORCE MAJEURE**: **Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable
220 to each other for damages so long as performance or non-performance of the obligation, or the availability of services,
221 insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure.
222 "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual
223 transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the
224 non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will
225 be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this
226 Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than
227 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
228 and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

229 **13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
230 not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
231 will be returned in accordance with applicable Florida Laws and regulations.

232 **14. DEFAULT:**
233     **(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
234     the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby
235     waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek
236     specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the
237     brokerage fee.
238     **(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1)
239     retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
240     execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
241     specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1)
242     terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without
243     waiving any remedy for **Buyer's** default.

244 **15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
245 prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable
246 attorneys' fees, costs, and expenses.

247 **16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
248 electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
249 document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
250 representing a party will be as effective as if given by or delivered to that party.

**Buyer** (_____) (_____) and **Seller** (_____) (_____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

**17. DISCLOSURES:**

**(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

**(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

**(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**18. RISK OF LOSS:**

**(a)** If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

**(b)** If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☒ is not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer, " "Seller"** and "Broker" may be singular or plural. This Contract is binding upon **Buyer**, **Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

**(a) Seller's Broker:** _____Brickell Brokers Corp. 12%_____3510191_____ ,
<span style="font-size:smaller">(Company Name)                                                              (Licensee)</span>
___1390 Brickell Ave #420 Miami, FL 33131    305-438-7777_____joleinmus@gmail.com_____ ,
<span style="font-size:smaller">(Address, Telephone, Fax, E-mail)</span>

who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
☒ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____
_____
_____

**(b) Buyer's Broker:** _____N/A_____ ,
<span style="font-size:smaller">(Company Name)                                                              (Licensee)</span>
_____ ,
<span style="font-size:smaller">(Address, Telephone, Fax, E-mail)</span>

**Buyer** (____) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

Serial#: 054907-700164-9711357

Form Simplicity

302 who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
303 ☐ **Seller's Broker** ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
304 _____
305 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
306 inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
307 indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
308 reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
309 inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
310 Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
311 services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
312 expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

313 **22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
314 this Contract):
315 ☐ (A) Arbitration                    ☐ (E) Seller Warranty              ☐ (I) Existing Mortgage
316 ☐ (B) Section 1031 Exchange          ☐ (F) Coastal Construction Control Li☐ (J) Buyer's Attorney Approval
317 ☐ (C) Property Inspection and Repair ☐ (G) Flood Area Hazard Zone       ☐ (K) Seller's Attorney Approval
318 ☐ (D) Seller Representations         ☐ (H) Seller Financing            ☐ Other _____

319 **23. ADDITIONAL TERMS:**
320 - The $20,000.00 escrow deposit referenced in paragraph #2, line 12 shall be submitted within 3 days of effective date
321 - Buyer and Seller acknowledge and agree there is no finance contingency and this is an all cash transaction
322 - Rivero Law LLC shall be the seller and buyers title agent
323 - Sale contingent on "Addendum to Contract" being fulfilled
324 _____
325 _____
326 _____
327 _____
328 _____
329 _____
330 _____
331 _____
332 _____
333 _____
334 _____
335 _____
336 _____
337 _____
338 _____
339 _____
340 _____
341 _____

342 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
343 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
344 **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
345 **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
346 **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
347 **REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**

**Buyer** (____) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

©2017 Florida Realtors®
Serial#: **054907-700164-9711357**
Form Simplicity

348  **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
349  **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
350  **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
351  **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
352  **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
353  **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

354  Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355  party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356  terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357  to do so.

358  _____  Date: _____4/11/2022_____
     (Signature of Buyer)

359  _____Armand Meyara_____  Tax ID No.: _____
     (Typed or Printed Name of Buyer)

360  Title: _____  Telephone: _____305-491-3795_____

361  _____  Date: _____
     (Signature of Buyer)

362  _____  Tax ID No.: _____
     (Typed or Printed Name of Buyer)

363  Title: _____  Telephone: _____

364  Buyer's Address for purpose of notice _____

365  Facsimile: _____  Email: _____oceanmoda@gmail.com_____

366  _____  Date: _____4/11/2022_____
     (Signature of Seller)

367  _____Michael Maranda_____  Tax ID No.: _____
     (Typed or Printed Name of Seller)

368  Title: _____  Telephone: _____518-898-8445_____

369  _____  Date: _____
     (Signature of Seller)

370  _____  Tax ID No.: _____
     (Typed or Printed Name of Seller)

371  Title: _____  Telephone: _____

372  Seller's Address for purpose of notice: _____

373  Facsimile: _____  Email: _____michael@michaelmarandallc.com___

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

**Buyer** (_____) (_____) and **Seller** (_____) (_____) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5   Rev 9/17                                                                                    ©2017 Florida Realtors®

Serial#: 054907-700164-9711357

# EXHIBIT

# B

Monday, May 2, 2022 at 14:38:54 Eastern Daylight Time

**Subject:** Re: Contact for Armand Meyara
**Date:** Thursday, April 28, 2022 at 6:03:43 PM Eastern Daylight Time
**From:** Michael Maranda
**To:** David Seltzer
**CC:** Jolein Mustafa, Poliana Rivero, oceanmoda@gmail.com
**Attachments:** image001.png, image002.png

Hello,

For personal reasons I cannot sell the property. Please cancel the sale and return all deposits to the buyer. This is final

Ty Mike

Sent from my iPhone

> On Apr 27, 2022, at 9:43 AM, David Seltzer <david@smfirm.com> wrote:
>
> Ok ty for the update.  If he changes his mind, my client is ready to close anytime.
>
> Sincerely yours,
>
> David Seltzer



**Seltzer Mayberg, LLC**
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

**From:** Jolein Mustafa <joleinmus@gmail.com>
**Date:** Wednesday, April 27, 2022 at 9:39 AM
**To:** David Seltzer <david@smfirm.com>
**Cc:** Poliana Rivero <privero@riverolawyers.com>, "michael@michaelmarandallc.com" <michael@michaelmarandallc.com>, "oceanmoda@gmail.com" <oceanmoda@gmail.com>
**Subject:** Re: FW: Contact for Armand Meyara

Good morning David,

Michael is still using the garage to store his cars so he's going to stick with the original closing date. Thanks.

Best,
Jolein

On Tue, Apr 26, 2022 at 11:42 AM David Seltzer <david@smfirm.com> wrote:

Morning Michael –

I represent Mr. Meyara in connection with the closing.  My client is ready to move forward and close on the property.  Please advise so we can schedule a closing date.  Thank you as my understanding is that this file is ready to close.

Sincerely yours,

David Seltzer



**Seltzer Mayberg, LLC**
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

**From:** Jolein Mustafa <joleinmus@gmail.com>
**Date:** Monday, April 25, 2022 at 6:45 PM
**To:** David Seltzer <david@smfirm.com>
**Cc:** Poliana Rivero <privero@riverolawyers.com>, "oceanmoda@gmail.com" <oceanmoda@gmail.com>
**Subject:** Re: Contact for Armand Meyara

michael@michaelmarandallc.com

On Mon, Apr 25, 2022 at 6:43 PM David Seltzer <david@smfirm.com> wrote:

> Which one is his email address?  Does he have an attorney?
>
> Sincerely yours,
>
> David Seltzer
> **Seltzer Mayberg, LLC**
> 10750 NW 6th Court
> Miami, Florida 33168
> Tel: 305.444.1565
> Cell: 786.877.8870
> Fax: 305.444.1665
> www.onecalllegal.com
> 1.855.5000.LAW
>
> THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.
>
>> On Apr 25, 2022, at 6:41 PM, Jolein Mustafa <joleinmus@gmail.com> wrote:
>>
>> Hi David,
>>
>> Michael is aware you guys are ready to close.  He's cc'd here and will get to it when he can. Thank you.
>>
>> Best,
>> Jolein
>>
>> On Mon, Apr 25, 2022 at 12:33 PM David Seltzer <david@smfirm.com> wrote:

Afternoon, circling back as my client is ready to close and move forward.  Please advise status on your end.  Thank you

Sincerely yours,

David Seltzer
<image001.png>

**Seltzer Mayberg, LLC**
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

**From:** David Seltzer <david@smfirm.com>
**Date:** Thursday, April 21, 2022 at 4:13 PM
**To:** Poliana Rivero <privero@riverolawyers.com>
**Cc:** "oceanmoda@gmail.com" <oceanmoda@gmail.com>
**Subject:** Re: Contact for Armand Meyara

Do you know who his attorney is?

Sincerely yours,

David Seltzer

**Seltzer Mayberg, LLC**
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com
1.855.5000.LAW

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE
INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS
ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE
EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED
RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR
COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION
CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE
IMMEDIATELY AND DELETE THIS FILE.

> On Apr 21, 2022, at 4:05 PM, Poliana Rivero
> <privero@riverolawyers.com> wrote:
>
> I have advised the seller. He said his attorney is looking into
> the matter and will get back to me.
>
> Thank you.
>
> <SIGNATURE POLIANA.png>
>
> STATEMENT OF CONFIDENTIALITY
> The contents of this e-mail message and any attachments are
> confidential and are intended solely for addressee. The information
> may also be legally privileged. This transmission is sent in trust, for the
> sole purpose of delivery to the intended recipient. If you have
> received this transmission in error, any use, reproduction or dissemination of
> this transmission is strictly prohibited. If you are not the intended
> recipient, please immediately notify the sender by reply e-mail or phone
> and delete this message and its attachments, if any.
>
> > On Apr 21, 2022, at 4:00 PM, David Seltzer
> > <david@smfirm.com> wrote:
> >
> > Received

Again my client is ready to close and will pay the $4k code violation.  He would like to close immediately.  Please advise when we can close. Thank you

Sincerely yours,

David Seltzer
**Seltzer Mayberg, LLC**
   10750 NW 6th Court
   Miami, Florida 33168
   Tel: 305.444.1565
   Cell: 786.877.8870
   Fax: 305.444.1665
   www.onecalllegal.com
   1.855.5000.LAW

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

> On Apr 21, 2022, at 3:56 PM, Poliana Rivero <privero@riverolawyers.com> wrote:
>
> David,

See attached.

[cid:e8d6fb2b-de75-4255-a341-f322a1567740@namprd04.prod.outlook.com]

STATEMENT OF CONFIDENTIALITY
The contents of this e-mail message and any attachments are confidential and are intended solely for addressee. The information may also be legally privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or phone and delete this message and its attachments, if any.

On Apr 21, 2022, at 3:04 PM, David Seltzer <david@smfirm.com<mailto:david@smfirm.com>> wrote:

Can you please send me a copy of draft title commitment.  Thank you

Sincerely yours,

David Seltzer
Seltzer Mayberg, LLC
10750 NW 6th Court
Miami, Florida 33168
Tel:
305.444.1565<tel:305.444.1565>
Cell:
786.877.8870<tel:786.877.8870>
Fax:
305.444.1665<tel:305.444.1665>
www.onecalllegal.com<http://w
ww.seltzermayberg.com/>
1.855.5000.LAW

THIS ELECTRONIC
COMMUNICATION CONTAINS
PRIVILEGED AND CONFIDENTIAL
INFORMATION INTENDED ONLY
FOR THE USE OF THE INDIVIDUAL
OR ENTITY NAMED ABOVE. IF THE
READER OF THIS ELECTRONIC
COMMUNICATION IS NOT THE
INTENDED RECIPIENT OR THE
EMPLOYEE OR AGENT RESPONSIBLE
FOR DELIVERING IT TO THE
INTENDED RECIPIENT, YOU ARE
HEREBY NOTIFIED THAT ANY
DISSEMINATION OR COPYING OF
THIS ELECTRONIC
COMMUNICATION OR THE
INFORMATION CONTAINED HEREIN
IS STRICTLY PROHIBITED. IF YOU
HAVE RECEIVED THIS ELECTRONIC
COMMUNICATION IN ERROR,
PLEASE NOTIFY OUR OFFICE
IMMEDIATELY AND DELETE THIS
FILE.

On Apr 21, 2022, at 2:14 PM, David
Seltzer
<david@smfirm.com<mailto:david

@smfirm.com>> wrote:

Afternoon, please contact me in regard to the attached PSA.  Thank you.  I can be reached on my cell anytime.

Sincerely yours,

David Seltzer

<image001.png>

Seltzer Mayberg, LLC
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com<http://www.onecalllegal.com/>

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC

COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.


From: David Seltzer <david@smfirm.com<mailto:david@smfirm.com>>
Date: Thursday, April 21, 2022 at 2:08 PM
To: "joleinmus@gmail.com<mailto:joleinmus@gmail.com>" <joleinmus@gmail.com<mailto:joleinmus@gmail.com>>
Subject: Contact for Armand Meyara

Please see my contact info.

Sincerely yours,

David Seltzer

<image002.png>

Seltzer Mayberg, LLC
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com<http://www.onecalllegal.com/>

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE

READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

<RE PSA Warehouse.pdf>
<image001.png><image002.png>

<Title Commitment.pdf>
<Lien Search.pdf>

**Error! Filename not specified.**

# EXHIBIT

# C

Monday, May 2, 2022 at 14:39:34 Eastern Daylight Time

| | |
|---|---|
| **Subject:** | Re: Contact for Armand Meyara |
| **Date:** | Monday, May 2, 2022 at 1:22:06 PM Eastern Daylight Time |
| **From:** | Poliana Rivero |
| **To:** | David Seltzer |
| **CC:** | Menachem Mayberg, Jenna Mitchell |
| **Attachments:** | SIGNATURE POLIANA.png |

Correct.



STATEMENT OF CONFIDENTIALITY
The contents of this e-mail message and any attachments are confidential and are intended solely for addressee. The information may also be legally privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or phone and delete this message and its attachments, if any.

On May 2, 2022, at 1:18 PM, David Seltzer <david@smfirm.com> wrote:

So the seller is the only impediment to closing at this time, correct?

Sincerely yours,

David Seltzer



**Seltzer Mayberg, LLC**
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

**From:** Poliana Rivero <privero@riverolawyers.com>
**Date:** Monday, May 2, 2022 at 1:10 PM
**To:** David Seltzer <david@smfirm.com>
**Cc:** Menachem Mayberg <menachem@smfirm.com>, Jenna Mitchell <jenna@smfirm.com>
**Subject:** Re: Contact for Armand Meyara

Nothing else, if the seller would confirm BI#5 items do not pertain to him and agree to sign a Non-ID affidavit.


<image002.png>

STATEMENT OF CONFIDENTIALITY
The contents of this e-mail message and any attachments are confidential and are intended solely for addressee. The information may also be legally privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or phone and delete this message and its attachments, if any.


On May 2, 2022, at 12:58 PM, David Seltzer <david@smfirm.com> wrote:

Sent you condo approval.  Anything else you need to get clear to close?

Sincerely yours,

David Seltzer





**Seltzer Mayberg, LLC**
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF
THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF
THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED
RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR
DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS
ELECTRONIC COMMUNICATION OR THE INFORMATION
CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR,
PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS
FILE.

---

**From:** Poliana Rivero <privero@riverolawyers.com>
**Date:** Monday, May 2, 2022 at 12:49 PM
**To:** David Seltzer <david@smfirm.com>
**Cc:** Menachem Mayberg <menachem@smfirm.com>, Jenna Mitchell
<jenna@smfirm.com>
**Subject:** Re: Contact for Armand Meyara

Good afternoon David,

I was missing the condo approval. My title commitment requires one but the
estoppel states N/A. Please advise if buyer has any information in this regard.

Also, the seller never confirmed if items in B#5 pertained to him or not. See
attached. It looks like is not the same person since the last name is Miranda
instead of Maranda.

STATEMENT OF CONFIDENTIALITY
The contents of this e-mail message and any attachments are confidential and are intended solely for addressee. The information may also be legally privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or phone and delete this message and its attachments, if any.

On May 2, 2022, at 12:14 PM, David Seltzer <david@smfirm.com> wrote:

Pursuant to our call last week, you are clear to close but for the seller's being unwilling to close as my client agreed to pay the code violations.  My client is ready to close today per the PSA. Thank you

Sincerely yours,

David Seltzer



**Seltzer Mayberg, LLC**
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED

HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

---

**From:** Poliana Rivero <privero@riverolawyers.com>
**Date:** Friday, April 29, 2022 at 4:24 PM
**To:** David Seltzer <david@smfirm.com>
**Subject:** Re: Contact for Armand Meyara

Thank you David. I will let you know as soon as I hear back from the seller.

<image002.png>

STATEMENT OF CONFIDENTIALITY
The contents of this e-mail message and any attachments are confidential and are intended solely for addressee. The information may also be legally privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or phone and delete this message and its attachments, if any.

On Apr 29, 2022, at 4:21 PM, David Seltzer <david@smfirm.com> wrote:

Thank you, pleasure speaking with you, as discussed my client is ready willing to be able to close. He has the funds available and is ready to wire to your trust account just let us know where and when to be to sign and pay. Have a great weekend.

Sincerely yours,

David Seltzer
**Seltzer Mayberg, LLC**
10750 NW 6th Court
Miami, Florida 33168

Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com
1.855.5000.LAW

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

> On Apr 21, 2022, at 4:05 PM, Poliana Rivero <privero@riverolawyers.com> wrote:
>
> I have advised the seller. He said his attorney is looking into the matter and will get back to me.
>
> Thank you.
>
>
> <SIGNATURE POLIANA.png>
>
> STATEMENT OF CONFIDENTIALITY
> The contents of this e-mail message and any attachments are confidential and are intended solely for addressee. The information may also be legally privileged. This transmission is sent in trust, for the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or phone and delete this message and its attachments, if any.

On Apr 21, 2022, at 4:00 PM,
David Seltzer
<david@smfirm.com> wrote:

Received


Again my client is ready to
close and will pay the $4k
code violation.  He would like
to close immediately.  Please
advise when we can close.
Thank you

Sincerely yours,

David Seltzer
**Seltzer Mayberg, LLC**
   10750 NW 6th Court
   Miami, Florida 33168
   Tel: 305.444.1565
   Cell: 786.877.8870
   Fax: 305.444.1665
   www.onecalllegal.com
   1.855.5000.LAW

THIS ELECTRONIC
COMMUNICATION CONTAINS
PRIVILEGED AND
CONFIDENTIAL INFORMATION
INTENDED ONLY FOR THE USE
OF THE INDIVIDUAL OR
ENTITY NAMED ABOVE. IF THE
READER OF THIS ELECTRONIC
COMMUNICATION IS NOT THE
INTENDED RECIPIENT OR THE
EMPLOYEE OR AGENT
RESPONSIBLE FOR
DELIVERING IT TO THE
INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT
ANY DISSEMINATION OR

COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

On Apr 21, 2022, at 3:56 PM, Poliana Rivero <privero@riverolawyers.com> wrote:

David,

See attached.

[cid:e8d6fb2b-de75-4255-a341-f322a1567740@namprd04.prod.outlook.com]

STATEMENT OF CONFIDENTIALITY
The contents of this e-mail

message and any
attachments are
confidential and
are intended
solely for
addressee. The
information may
also be legally
privileged. This
transmission is
sent in trust, for
the sole purpose
of delivery to the
intended
recipient. If you
have received
this transmission
in error, any use,
reproduction or
dissemination of
this transmission
is strictly
prohibited. If you
are not the
intended
recipient, please
immediately
notify the sender
by reply e-mail
or phone and
delete this
message and its
attachments, if
any.

On Apr 21, 2022,
at 3:04 PM,
David Seltzer
<david@smfirm.
com<mailto:davi
d@smfirm.com>
> wrote:

Can you please send me a copy of draft title commitment. Thank you

Sincerely yours,

David Seltzer
Seltzer Mayberg, LLC
   10750 NW 6th Court
   Miami, Florida 33168
   Tel: 305.444.1565<[tel:305.444.1565](tel:305.444.1565)>
   Cell: 786.877.8870<[tel:786.877.8870](tel:786.877.8870)>
   Fax: 305.444.1665<[tel:305.444.1665](tel:305.444.1665)>

[www.onecalllegal.com](http://www.onecalllegal.com)<[http://www.seltzermayberg.com/](http://www.seltzermayberg.com/)>

1.855.5000.LAW

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF

THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

On Apr 21, 2022, at 2:14 PM, David Seltzer <david@smfirm.com<mailto:david@smfirm.com>> wrote:

Afternoon, please contact me in regard to the attached PSA.  Thank you.  I can be reached on my cell anytime.

Sincerely yours,

David Seltzer

<image001.png>

Seltzer Mayberg, LLC
10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
www.onecalllegal.com<http://www.onecalllegal.com/>

THIS

ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC

COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.


From: David Seltzer <david@smfirm.com<mailto:david@smfirm.com>>
Date: Thursday, April 21, 2022 at 2:08 PM
To: "joleinmus@gmail.com<mailto:joleinmus@gmail.com>" <joleinmus@gmail.com<mailto:joleinmus@gmail.com>>
Subject: Contact for Armand Meyara

Please see my contact info.

Sincerely yours,

David Seltzer

<image002.png>

Seltzer Mayberg, LLC

10750 NW 6th Court
Miami, Florida 33168
Tel: 305.444.1565
Cell: 786.877.8870
Fax: 305.444.1665
[www.onecalllegal.com](http://www.onecalllegal.com/)<http://www.onecalllegal.com/>

THIS ELECTRONIC COMMUNICATION CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS ELECTRONIC COMMUNICATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY

NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS ELECTRONIC COMMUNICATION OR THE INFORMATION CONTAINED HEREIN IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS ELECTRONIC COMMUNICATION IN ERROR, PLEASE NOTIFY OUR OFFICE IMMEDIATELY AND DELETE THIS FILE.

<RE PSA Warehouse.pdf>
<image001.png>
<image002.png>

<Title Commitment.pdf>
<Lien Search.pdf>


# IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT OF FLORIDA, IN AND FOR MIAMI-DADE COUNTY

CASE NO.: _____

ARMAND MEYARA,
    Plaintiff,
          vs.
MICHAEL MARANDA,
    Defendant.
_____/

## NOTICE OF *LIS PENDENS*

**TO DEFENDANT: MICHAEL MARANDA**

**AND ALL OTHERS TO WHOM THIS MAY CONCERN:**

NOTICE IS HEREBY GIVEN that suit was instituted in the Circuit Court in and for Miami-Dade County, Florida, on the 3rd day of May 2022 by Plaintiff, ARMAND MEYARA, against Defendant, MICHAEL MARANDA, seeking specific performance of a Exclusive Right of Sale Listing Agreement. The lot involved is that certain lot, parcel or piece of land situated in, lying and being in Miami-Dade County, Florida, being more particularly described as follows:

> **WEST AIRPORT PALMS BUSN PK CONDO**
> **UNIT 8 BLDG B**
> **UNDIV 8.94%**
> **INT IN COMMON ELEMENTS**
> **OFF REC 27606-3701**
> **(2375 NW 70th Avenue, Unit 8, Bldg. B, Miami, FL 33122)**
> **(Folio: 30-3035-021-0220)**

Dated: May 4th, 2022

Respectfully Submitted,

SELTZER MAYBERG LLC
Attorneys for Plaintiffs
10750 NW 6th Court
Miami, FL 33168
Telephone: (305) 444-1565
Facsimile: (305) 444-1665

By: _s/ MMM._
Menachem M. Mayberg
Florida Bar No: 0596744
Email: menachem@smfirm.com

122-008262-CA-01



# MIAMI-DADE COUNTY CLERK OF THE COURTS
## HARVEY RUVIN

Contact Us    My Account    

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◄◄ BACK

## ARMAND MEYARA VS MICHAEL MARANDA

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2022-008262-CA-01 | **Filing Date:** | 05/04/2022 |
| **State Case Number:** | 132022CA008262000001 | **Judicial Section:** | CA08 |
| **Consolidated Case No.:** | N/A | **Case Type:** | Contract & Indebtedness |
| **Case Status:** | CLOSED | | |

## 👥 Parties
Total Of Parties: 2 —

| Party Description | Party Name | Attorney Information | Other Attorney(S) |
|---|---|---|---|
| Plaintiff | MEYARA, ARMAND | **B#: (Bar Number)** 596744 <br> **N: (Attorney Name)** Mayberg, Menachen | |
| Defendant | MARANDA, MICHAEL | | |

## 🔧 Hearing Details
Total Of Hearings: 0 —

| Hearing Date | Hearing Time | Hearing Code | Description | Hearing Location |
|---|---|---|---|---|

## 📶 Dockets
Total Of Dockets: 18 —

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 19 | 09/27/2022 | | Voluntary Dismissal | Judgment | |
| 📄 | 18 | 09/27/2022 | 33403:743 | Voluntary Dismissal | Event | **WITH PREJUDICE** <br> Parties: MARANDA MICHAEL |
| 📄 | 17 | 09/27/2022 | | Order Setting CM Deadline | Event | **CASE MANAGEMENT ORDER** |
| | 16 | 07/20/2022 | | Receipt: | Event | RECEIPT#:3020201 AMT PAID:$5.00 NAME:MAYBERG, MENACHEN SELTZER MAYBERG, LLC 10750 NW 6TH COURT 2ND MIAMI FL 33168 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3142-RECORDING FEE 1 $5.00 $5.00 TENDER TYPE:EFILINGS TENDER AMT:$5.00 RECEIPT DATE:07/20/2022 REGISTER#:302 CASHIER:EFILINGUSER |
| 📄 | 15 | 07/19/2022 | 33297:3429 | Discharge/release of Lis Pendens | Event | |
| 📄 | 14 | 05/23/2022 | | Notice of Appearance | Event | |

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|--------|------|-----------|--------------|------------|----------|
| | 05/06/2022 | | 20 Day Summons Issued | Served | |

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|--------|------|-----------|--------------|------------|----------|
| 13 | 05/06/2022 | | ESummons 20 Day Issued | Event | **RE: INDEX # 9.** Parties: MARANDA MICHAEL |
| 12 | 05/06/2022 | | Receipt: | Event | **RECEIPT#:3080256 AMT PAID:$10.00 NAME:SELTZER, DAVID S. 10750 NW 6 CT FL 2 MIAMI FL 33168 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:EFILINGS TENDER AMT:$10.00 RECEIPT DATE:05/06/2022 REGISTER#:308 CASHIER:EFILINGUSER** |
| 11 | 05/06/2022 | | Receipt: | Event | **RECEIPT#:3080079 AMT PAID:$406.00 NAME:MAYBERG, MENACHEN SELTZER MAYBERG, LLC 10750 NW 6TH COURT 2ND MIAMI FL 33168 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 3142-RECORDING FEE 1 $5.00 $5.00 TENDER TYPE:EFILINGS TENDER AMT:$406.00 RECEIPT DATE:05/06/2022 REGISTER#:308 CASHIER:EFILINGUSER** |
| 9 | 05/05/2022 | | (M) 20 Day (P) Summons (Sub) Received | Event | |
| 8 | 05/05/2022 | 33173:151 | Lis Pendens | Event | |
| 7 | 05/04/2022 | | Notice of Interrogatory | Event | |
| 6 | 05/04/2022 | | Request for Admissions | Event | |
| 5 | 05/04/2022 | | Request for Production | Event | |
| 4 | 05/04/2022 | | Email Notice: | Event | **FILING@SMFIRM.COM** |
| 2 | 05/04/2022 | | Complaint | Event | |
| 1 | 05/04/2022 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home



Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



# HARVEY RUVIN

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2022 Clerk of the Courts. All rights reserved.





# COMPOSITE

# EXHIBIT "6"

NYSCEF - New York State Courts Electronic Filing (Live System)

<< *Return to* **Search Results**

**2022-749 -** Schenectady County Supreme Court

Short Caption: **BIT INTELLIGENCE, LLC et al v. MICHAEL MARANDA et al**
Case Type: **Commercial - Contract**
Case Status: **Active**
eFiling Status: **Full Participation Recorded**
Assigned Judge: **Michael Cuevas**

## Narrow By Options

| | | |
|---|---|---|
| Document Type: | Please select... | Filed By: |
| | Please select... | |
| Motion Info: | Please select... | Filed Date: |
| | [ ] 📅 thru [ ] 📅 | |
| Document Number: | [ ] | |

Display Document List with Motion Folders 📁

**Sort By:** Doc #

| # | Document | Filed By | Status |
|---|---|---|---|
| 1 | **SUMMONS** *Summons* | Massey, D. Filed: 05/10/2022 Received: 05/10/2022 | **Processed** Confirmation Notice |
| 2 | **COMPLAINT** *Complaint* | Massey, D. Filed: 05/10/2022 Received: 05/10/2022 | **Processed** Confirmation Notice |
| 3 | **AFFIRMATION/AFFIDAVIT OF SERVICE** *Affidavit of Service upon Defendant Micheal Maranda LLC* | Massey, D. Filed: 05/13/2022 Received: 05/13/2022 | **Processed** Confirmation Notice |
| 4 | **STIPULATION - TIME TO ANSWER** *Stipulation for Extension of Time to Answer or Otherwise Move and Acknowledgment of Service by Defen ... show more* | Massey, D. Filed: 05/31/2022 Received: 05/31/2022 | **Processed** Confirmation Notice |
| 5 | **ORDER TO SHOW CAUSE ( PROPOSED )** (Motion #1) *Proposed Order to Show Cause* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 6 | **AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP** (Motion #1) *Affidavit of Corey Dozhier In Support* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 7 | **EXHIBIT(S)** - A (Motion #1) *Exhibit A - MMLLC Mining Hosting Services Agreement* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 8 | **EXHIBIT(S)** - B (Motion #1) *Exhibit B - MMLLC BIT Intelligence Mining Hosting Services Agreement Plattsburgh and RP* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 9 | **EXHIBIT(S)** - C (Motion #1) *Exhibit C - MMLLC BIT Intelligence Mining Hosting Services Agreement RP* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 10 | **EXHIBIT(S)** - D (Motion #1) *Exhibit D - March 10, 14, 24, 30 Email Thread* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 11 | **EXHIBIT(S)** - E (Motion #1) *Exhibit E - March 15 Email* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 12 | **EXHIBIT(S)** - F (Motion #1) *Exhibit F - 2022.05.23 Warrant* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 13 | **EXHIBIT(S)** - G (Motion #1) *Exhibit G - Condemnation Notice - 2022.05.26 Notice on Gate* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 14 | **AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP** (Motion #1) *Affirmation of Rachel S. Mechanic in Support* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 15 | **EXHIBIT(S)** - H (Motion #1) *Exhibit H - 2022.04.15 - Message re police reports and insurance claims* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 16 | **EXHIBIT(S)** - I (Motion #1) *Exhibit I - 2022.04.19 - Message re police reports and insurance claims* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 17 | **EXHIBIT(S)** - J (Motion #1) *Exhibit J - 2022.05.17 - Message re no police reports or insurance claims* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 18 | **EXHIBIT(S)** - K (Motion #1) *Telegram Messages* | Mechanic, R. Filed: 06/01/2022 Received: 06/01/2022 | **Processed** Confirmation Notice |
| 19 | **EXHIBIT(S)** - L (Motion #1) *Exhibit L - Message re access to RP and employees* | Mechanic, R. Filed: 06/01/2022 | **Processed** Confirmation Notice |

| | | | |
|---|---|---|---|
| | Exhibit L - Message re access to KP and employees | Filed: 06/01/2022 | Confirmation Notice |
| | | Received: 06/01/2022 | |
| 20 | EXHIBIT(S) - M (Motion #1)<br>*Exhibit M - EF2022-117 - MinedMap Inc et al v Hari Achuthan et al Complaint* | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 21 | EXHIBIT(S) - N (Motion #1)<br>*Exhibit N - Hatker Affidavit - Williams Letter Exhibit 5 - EF2022-117* | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 22 | EXHIBIT(S) - O (Motion #1)<br>*Exhibit O - Williams letter to judge about Hatker - EF2022-117 MinedMap Inc et al v Hari Achuthan e ...*<br>show more | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 23 | EXHIBIT(S) - P (Motion #1)<br>*Exhibit P - Williams Affidavit - Minedmap Inc. v. Hari Achuthan EF 2022-117* | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 24 | EXHIBIT(S) - Q (Motion #1)<br>*Exhibit Q - Williams Affidavit - Minedmap - EF2022-117* | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 25 | EXHIBIT(S) - R (Motion #1)<br>*Exhibit R - Plaintiffs' First Set of Requests for Production* | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 26 | MEMORANDUM OF LAW IN SUPPORT (Motion #1)<br>*Memorandum of Law in Support* | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 27 | RJI -RE: ORDER TO SHOW CAUSE (Motion #1)<br>*Request for Judicial Intervention* | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 28 | ADDENDUM - COMMERCIAL DIVISION (840C)<br>(Motion #1) | Mechanic, R.<br>Filed: 06/01/2022<br>Received: 06/01/2022 | **Processed**<br>Confirmation Notice |
| 29 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP (Motion #1)<br>*Affidavit of Hong Peng A/K/A Shawn Peng in Support* | Mechanic, R.<br>Filed: 06/02/2022<br>Received: 06/02/2022 | **Processed**<br>Confirmation Notice |
| 30 | EXHIBIT(S) - S (Motion #1)<br>*Exhibit S - Serial Numbers* | Mechanic, R.<br>Filed: 06/02/2022<br>Received: 06/02/2022 | **Processed**<br>Confirmation Notice |
| 31 | LETTER / CORRESPONDENCE TO JUDGE (Motion #1)<br>*Letter to Judge Cuevas re Plaintiffs' Order to Show Cause* | Neidl, B.<br>Filed: 06/02/2022<br>Received: 06/02/2022 | **Processed**<br>Confirmation Notice |
| 32 | LETTER / CORRESPONDENCE TO JUDGE (Motion #1)<br>*Letter Responding to Defendants' June 2, 2022 Letter* | Mechanic, R.<br>Filed: 06/06/2022<br>Received: 06/06/2022 | **Processed**<br>Confirmation Notice |
| 33 | LETTER / CORRESPONDENCE TO JUDGE (Motion #1)<br>*Letter to the Court in response to Plaintiffs' letter of today.* | Neidl, B.<br>Filed: 06/06/2022<br>Received: 06/06/2022 | **Processed**<br>Confirmation Notice |
| 34 | NOTICE OF MOTION (Motion #2) | Massey, D.<br>Filed: 06/07/2022<br>Received: 06/07/2022 | **Processed**<br>Confirmation Notice |
| 35 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #2)<br>*Affirmation of David B. Massey in Support of Motion to Grant Pro Hac Vice Admission to L. Norton Cut ...*<br>show more | Massey, D.<br>Filed: 06/07/2022<br>Received: 06/07/2022 | **Processed**<br>Confirmation Notice |
| 36 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #2)<br>*L. Norton Cutler, Jr. Affidavit in Support of Motion for Pro Hac Vice Admission* | Massey, D.<br>Filed: 06/07/2022<br>Received: 06/07/2022 | **Processed**<br>Confirmation Notice |
| 37 | EXHIBIT(S) - A (Motion #2)<br>*Exhibit A - Certificates of Good Standing* | Massey, D.<br>Filed: 06/07/2022<br>Received: 06/07/2022 | **Processed**<br>Confirmation Notice |
| 38 | ORDER ( PROPOSED ) (Motion #2)<br>*Proposed Order Granting Pro Hac Vice Admission of L. Norton Cutler, Jr.* | Massey, D.<br>Filed: 06/07/2022<br>Received: 06/07/2022 | **Processed**<br>Confirmation Notice |
| 39 | NOTICE OF MOTION (Motion #3) | Massey, D.<br>Filed: 06/07/2022<br>Received: 06/07/2022 | **Processed**<br>Confirmation Notice |
| 40 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #3)<br>*Affirmation of David B. Massey in Support of Motion* | Massey, D.<br>Filed: 06/07/2022 | **Processed**<br>Confirmation Notice |

Affirmation of David B. Massey in Support of Motion
to Grant Pro Hac Vice Admission to T. Marcus Fun ...
*show more*

| 41 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #3)<br>*Funk Affidavit in Support of Motion Granting Pro Hac Vice* | Massey, D.<br>Filed: 06/07/2022<br>*Received: 06/07/2022* | **Processed**<br>Confirmation Notice |
|----|----|----|----|
| 42 | EXHIBIT(S)  - A  (Motion #3)<br>*Exhibit A - Certificates of Good Standing* | Massey, D.<br>Filed: 06/07/2022<br>*Received: 06/07/2022* | **Processed**<br>Confirmation Notice |
| 43 | ORDER ( PROPOSED )  (Motion #3) | Massey, D.<br>Filed: 06/07/2022<br>*Received: 06/07/2022* | **Processed**<br>Confirmation Notice |
| 44 | NOTICE OF MOTION  (Motion #4) | Massey, D.<br>Filed: 06/07/2022<br>*Received: 06/07/2022* | **Processed**<br>Confirmation Notice |
| 45 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #4)<br>*Affirmation of David B. Massey in Support of Motion to Grant Pro Hac Vice Admission to Marcus A. Hag ...*<br>*show more* | Massey, D.<br>Filed: 06/07/2022<br>*Received: 06/07/2022* | **Processed**<br>Confirmation Notice |
| 46 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #4)<br>*Haggard Affidavit in Support of Motion for Pro Hac Vice Admission* | Massey, D.<br>Filed: 06/07/2022<br>*Received: 06/07/2022* | **Processed**<br>Confirmation Notice |
| 47 | EXHIBIT(S)  - A  (Motion #4)<br>*Exhibit A - Certificate of Good Standing* | Massey, D.<br>Filed: 06/07/2022<br>*Received: 06/07/2022* | **Processed**<br>Confirmation Notice |
| 48 | ORDER ( PROPOSED )  (Motion #4)<br>*Proposed Order Granting Pro Hac Vice Admission of Marcus A. Haggard* | Massey, D.<br>Filed: 06/07/2022<br>*Received: 06/07/2022* | **Processed**<br>Confirmation Notice |
| 49 | ORDER TO SHOW CAUSE  (Motion #1) *Corrected*<br> | Court User<br>Filed: 06/15/2022<br>*Received: 06/15/2022* | **Processed**<br>Confirmation Notice |
| 50 | EXHIBIT(S)  - S  (Motion #1)<br>*OTSC Exhibit S* | Court User<br>Filed: 06/15/2022<br>*Received: 06/15/2022* | **Processed**<br>Confirmation Notice |
| 51 | ORDER - OTHER  (Motion #2)<br>*Order Pro Hac Vice* | Court User<br>Filed: 06/15/2022<br>*Received: 06/15/2022* | **Processed**<br>Confirmation Notice |
| 52 | ORDER - OTHER  (Motion #3)<br>*Order Pro Hac Vice* | Court User<br>Filed: 06/15/2022<br>*Received: 06/15/2022* | **Processed**<br>Confirmation Notice |
| 53 | ORDER - OTHER  (Motion #4)<br>*Order Pro Hac Vice* | Court User<br>Filed: 06/15/2022<br>*Received: 06/15/2022* | **Processed**<br>Confirmation Notice |
| 54 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION  (Motion #1)<br>*Defendants' Attorney Affirmation of Benjamin F. Neidl in Response to Motion for Replevin and Injunct ... show more* | Neidl, B.<br>Filed: 06/22/2022<br>*Received: 06/22/2022* | **Processed**<br>Confirmation Notice |
| 55 | MEMORANDUM OF LAW IN OPPOSITION  (Motion #1)<br>*Defendants' Memorandum of Law in Response to Motion for Replevin and Injunctive Relief* | Neidl, B.<br>Filed: 06/22/2022<br>*Received: 06/22/2022* | **Processed**<br>Confirmation Notice |
| 56 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION  (Motion #1)<br>*Affidavit of Michael Maranda in Response to Motion for Replevin and Injunctive Relief* | Neidl, B.<br>Filed: 06/22/2022<br>*Received: 06/22/2022* | **Processed**<br>Confirmation Notice |
| 57 | EXHIBIT(S)  - A  (Motion #1)<br>*Exhibit A to the Affidavit of Michael Maranda in Response to Motion for Replevin and Injunctive Reli ... show more* | Neidl, B.<br>Filed: 06/22/2022<br>*Received: 06/22/2022* | **Processed**<br>Confirmation Notice |
| 58 | AFFIRMATION/AFFIDAVIT OF SERVICE  (Motion #1)<br>*Affirmation of Service re NYSCEF Docs. #54, #55, #56 and #57* | Neidl, B.<br>Filed: 06/22/2022<br>*Received: 06/22/2022* | **Processed**<br>Confirmation Notice |
| 59 | AFFIDAVIT OR AFFIRMATION IN REPLY  (Motion #1)<br>*Reply Affirmation of Rachel Mechanic in Further Support* | Mechanic, R.<br>Filed: 06/24/2022<br>*Received: 06/24/2022* | **Processed**<br>Confirmation Notice |
| 60 | EXHIBIT(S)  - A  (Motion #1)<br>*Exhibit A - Maranda's Initial Affidavit (2022-905 Maranda v. ERS)* | Mechanic, R.<br>Filed: 06/24/2022<br>*Received: 06/24/2022* | **Processed**<br>Confirmation Notice |

| 61 | EXHIBIT(S) - B  (Motion #1) *Exhibit B - Maranda's Corrected Affidavit (2022-905 Maranda v. ERS)* | Mechanic, R. Filed: 06/24/2022 *Received: 06/24/2022* | **Processed** Confirmation Notice |
|---|---|---|---|
| 62 | EXHIBIT(S) - C  (Motion #1) *Exhibit C - Proposed Notice of Inspection* | Mechanic, R. Filed: 06/24/2022 *Received: 06/24/2022* | **Processed** Confirmation Notice |
| 63 | MEMORANDUM OF LAW IN REPLY  (Motion #1) *Reply Memorandum of Law in Further Support of Motion* | Mechanic, R. Filed: 06/24/2022 *Received: 06/24/2022* | **Processed** Confirmation Notice |
| 64 | LETTER / CORRESPONDENCE TO JUDGE  (Motion #1) *Letter from Rachel S. Mechanic to the Hon. Michael Cuevas attaching a Report to be filed as an Addit ... show more* | Mechanic, R. Filed: 06/27/2022 *Received: 06/27/2022* | **Processed** Confirmation Notice |
| 65 | ORDER - OTHER | Court User Filed: 06/29/2022 *Received: 06/29/2022* | **Processed** Confirmation Notice |
| 66 | NOTICE OF MOTION  (Motion #5) *Notion of Partial Motion to Dismiss* | Neidl, B. Filed: 07/01/2022 *Received: 07/01/2022* | **Processed** Confirmation Notice |
| 67 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION  (Motion #5) *Attorney Affirmation of Benjamin F. Neidl in Support of Partial Motion to Dismiss* | Neidl, B. Filed: 07/01/2022 *Received: 07/01/2022* | **Processed** Confirmation Notice |
| 68 | EXHIBIT(S) - 1  (Motion #5) *Exhibit 1 to Neidl Affirmation (Motion to Dismiss) - Complaint* | Neidl, B. Filed: 07/01/2022 *Received: 07/01/2022* | **Processed** Confirmation Notice |
| 69 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION  (Motion #5) *Affidavit of Michael Maranda in Support of Partial Motion to Dismiss* | Neidl, B. Filed: 07/01/2022 *Received: 07/01/2022* | **Processed** Confirmation Notice |
| 70 | EXHIBIT(S) - A  (Motion #5) *Exhibit A to Maranda Affidavit (Motion to Dismiss) - Redacted Maine Master Agreement* | Neidl, B. Filed: 07/01/2022 *Received: 07/01/2022* | **Processed** Confirmation Notice |
| 71 | EXHIBIT(S) - B  (Motion #5) *Exhibit B to Maranda Affidavit (Motion to Dismiss) - Redacted Service Level Supplement - Redacted* | Neidl, B. Filed: 07/01/2022 *Received: 07/01/2022* | **Processed** Confirmation Notice |
| 72 | MEMORANDUM OF LAW IN SUPPORT  (Motion #5) *Defendants' Memorandum of Law in Support of Partial Motion to Dismiss* | Neidl, B. Filed: 07/01/2022 *Received: 07/01/2022* | **Processed** Confirmation Notice |
| 73 | STIPULATION - OTHER - ( REQUEST TO SO ORDER )  (Motion #5) *Stipulation Adjourning the Due Date for the Opposition to Plainitff's Partial Motion to Dismiss and ... show more* | Mechanic, R. Filed: 07/08/2022 *Received: 07/08/2022* | **Processed** Confirmation Notice |
| 74 | STIPULATION - SO ORDERED | Court User Filed: 07/12/2022 *Received: 07/11/2022* | **Processed** Confirmation Notice |
| 75 | ORDER TO SHOW CAUSE ( PROPOSED )  (Motion #6) | Harwick, J. Filed: 07/14/2022 *Received: 07/14/2022* | **Processed** Confirmation Notice |

**Narrow By Options**

| | | | |
|---|---|---|---|
| Document Type: | Please select... | Filed By: | |
| | Please select... | | |
| Motion Info: | Please select... | Filed Date: | |
| | ☐ 📅 thru ☐ 📅 | | |
| Document Number: | ☐ | | |

[Display Document List with Motion Folders](#) 📁

**Sort By:** Doc #

| # | Document | Filed By | Status |
|---|----------|----------|--------|
| 76 | [AFFIDAVIT OR AFFIRMATION IN SUPPORT](#) (Motion #6) | Harwick, J. Filed: 07/14/2022 Received: 07/14/2022 | **Processed** Confirmation Notice |
| 77 | [ORDER TO SHOW CAUSE](#) (Motion #6) | Court User Filed: 07/19/2022 Received: 07/18/2022 | **Processed** Confirmation Notice |
| 78 | [ACKNOWLEDGEMENT OF SERVICE](#) (Motion #6) | Harwick, J. Filed: 07/19/2022 Received: 07/19/2022 | **Processed** Confirmation Notice |
| 79 | [AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO ORDER TO SHOW CAUSE](#) (Motion #6) *Mechanic Affirmation In Support of Plaintiff's Response to Motion* | Mechanic, R. Filed: 07/27/2022 Received: 07/27/2022 | **Processed** Confirmation Notice |
| 80 | [EXHIBIT(S)](#) - A (Motion #6) *Purchase Agreement* | Mechanic, R. Filed: 07/27/2022 Received: 07/27/2022 | **Processed** Confirmation Notice |
| 81 | [EXHIBIT(S)](#) - B (Motion #6) *Foreclosure Complaint* | Mechanic, R. Filed: 07/27/2022 Received: 07/27/2022 | **Processed** Confirmation Notice |
| 82 | [EXHIBIT(S)](#) - C (Motion #6) *Highlighted Exhibit S* | Mechanic, R. Filed: 07/27/2022 Received: 07/27/2022 | **Processed** Confirmation Notice |
| 83 | [EXHIBIT(S)](#) - D (Motion #6) *List of 47 Stolen Miners* | Mechanic, R. Filed: 07/27/2022 Received: 07/27/2022 | **Processed** Confirmation Notice |
| 84 | [AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO ORDER TO SHOW CAUSE](#) (Motion #6) | Mechanic, R. Filed: 07/27/2022 Received: 07/27/2022 | **Processed** Confirmation Notice |
| 85 | [MEMORANDUM OF LAW IN OPPOSITION](#) (Motion #6) *Memorandum of Law in Response to Defendants' Counsel's Motion to Withdraw* | Mechanic, R. Filed: 07/27/2022 Received: 07/27/2022 | **Processed** Confirmation Notice |
| 86 | [AFFIDAVIT OR AFFIRMATION IN REPLY](#) (Motion #6) *Reply Affirmation of John Harwick in further support of motion to withdraw* | Neidl, B. Filed: 07/29/2022 Received: 07/29/2022 | **Processed** Confirmation Notice |
| 87 | [EXHIBIT(S)](#) - A (Motion #6) *Exhibit A to Harwick Reply Affirmation - Lease* | Neidl, B. Filed: 07/29/2022 Received: 07/29/2022 | **Processed** Confirmation Notice |
| 88 | [AFFIDAVIT OR AFFIRMATION IN REPLY](#) (Motion #6) *Reply Affirmation of Benjamin Neidl in Further Support of Motion to Withdraw* | Neidl, B. Filed: 07/29/2022 Received: 07/29/2022 | **Processed** Confirmation Notice |
| 89 | [AFFIRMATION/AFFIDAVIT OF SERVICE](#) (Motion #6) *Affirmation of Service re NYSCEF Docs. #86, #87 and #88* | Neidl, B. Filed: 07/29/2022 Received: 07/29/2022 | **Processed** Confirmation Notice |
| 90 | [LETTER / CORRESPONDENCE TO JUDGE](#) (Motion #6) *Letter to the Hon. Michael Cuevas from Rachel Mechanic dated August 4, 2022* | Mechanic, R. Filed: 08/04/2022 Received: 08/04/2022 | **Processed** Confirmation Notice |
| 91 | [MEMORANDUM OF LAW](#) (Motion #6) *Plaintiff's Amended Response to Defendants Counsels Motion to Withdraw* | Mechanic, R. Filed: 08/04/2022 Received: 08/04/2022 | **Processed** Confirmation Notice |
| 92 | [AFFIRMATION](#) (Motion #6) *Corrected Affirmation of Rachel Mechanic in Support of Plaintiff's Amended Response to Defendants Co ... more* [Possible SSN Possibly Redacted](#) | Mechanic, R. Filed: 08/04/2022 Received: 08/04/2022 | **Processed** Confirmation Notice |

| 93 | EXHIBIT(S) - A (Motion #6)<br>*Exhibit A - Purchase Agreement* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
|---|---|---|---|
| 94 | EXHIBIT(S) - B (Motion #6)<br>*Exhibit B - Complaint* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 95 | EXHIBIT(S) - C (Motion #6)<br>*Exhibit C - Ex. S with Serial Nos Highlighted* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 96 | EXHIBIT(S) - D (Motion #6)<br>*Exhibit D - 6.8 Transcript* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 97 | EXHIBIT(S) - E (Motion #6)<br>*Exhibit E - 6.27 Transcript* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 98 | ORDER TO SHOW CAUSE ( PROPOSED ) (Motion #7)<br>*Proposed Order to Show Cause for an Application for an Order of Seizure* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 99 | MEMORANDUM OF LAW IN SUPPORT (Motion #7)<br>*Plaintiffs' Application for an Order of Seizure* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 100 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP (Motion #7)<br>*Affirmation of Rachel Mechanic in Support of Application for an Order of Seizure*<br>*Possible SSN Administratively Redacted* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 101 | EXHIBIT(S) - A (Motion #7)<br>*Exhibit A - Purchase Agreement* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 102 | EXHIBIT(S) - B (Motion #7)<br>*Exhibit B - Complaint* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 103 | EXHIBIT(S) - C (Motion #7)<br>*Exhibit C - Ex. S with Serial Nos Highlighted* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 104 | EXHIBIT(S) - D (Motion #7)<br>*Exhibit D - 6.8 Transcript* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 105 | EXHIBIT(S) - E (Motion #7)<br>*Exhibit E - 6.27 Transcript* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 106 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP (Motion #7)<br>*Affidavit of Chris Schroeder in Support of Application for an Order of Seizure* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 107 | EXHIBIT(S) - A (Motion #7)<br>*Exhibit A - List of 27 Miners Found at Coxsackie 7.7* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 108 | EXHIBIT(S) - B (Motion #7)<br>*Exhibit B - Exhibit S Highlighted to Show 27 Miners* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 109 | EXHIBIT(S) - C (Motion #7)<br>*Exhibit C - List of 38 Miners Found at Coxsackie 7.21* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 110 | EXHIBIT(S) - D (Motion #7)<br>*Exhibit D - Exhibit S Highlighted to Show 38 Miners* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 111 | EXHIBIT(S) - E (Motion #7)<br>*Exhibit E - List of 9 Additional Miners Found at Coxsackie 7.21* | Mechanic, R.<br>Filed: 08/04/2022<br>*Received: 08/04/2022* | **Processed**<br>Confirmation Notice |
| 112 | ORDER ( PROPOSED ) (Motion #7)<br>*Proposed Order of Seizure* | Mechanic, R.<br>Filed: 08/05/2022<br>*Received: 08/05/2022* | **Processed**<br>Confirmation Notice |
| 113 | ORDER ( PROPOSED ) (Motion #6)<br>*Proposed Order of Withdrawal of Defendants' Counsel* | Mechanic, R.<br>Filed: 08/05/2022<br>*Received: 08/05/2022* | **Processed**<br>Confirmation Notice |
| 114 | ORDER - OTHER | Court User<br>Filed: 08/09/2022<br>*Received: 08/09/2022* | **Processed**<br>Confirmation Notice |

| | | | |
|---|---|---|---|
| 115 | ORDER - OTHER<br>*Consent Order OF SEIZURE* | Court User<br>Filed: 08/09/2022<br>*Received: 08/09/2022* | **Processed**<br>Confirmation Notice |
| 116 | EXHIBIT(S) - A<br>*Consent Order Exhibit A* | Court User<br>Filed: 08/09/2022<br>*Received: 08/09/2022* | **Processed**<br>Confirmation Notice |
| 117 | EXHIBIT(S) - B<br>*Consent Order Exhibit B* | Court User<br>Filed: 08/09/2022<br>*Received: 08/09/2022* | **Processed**<br>Confirmation Notice |
| 118 | NOTICE OF ENTRY | Harwick, J.<br>Filed: 08/09/2022<br>*Received: 08/09/2022* | **Processed**<br>Confirmation Notice |
| 119 | NOTICE OF ENTRY  (Motion #7)<br>*Notice of Entry of Order - Consent to Seizure* | Mechanic, R.<br>Filed: 08/09/2022<br>*Received: 08/09/2022* | **Processed**<br>Confirmation Notice |
| 120 | ORDER ( PROPOSED )<br>*Proposed Order* | Massey, D.<br>Filed: 08/30/2022<br>*Received: 08/30/2022* | **Processed**<br>Confirmation Notice |
| 121 | ORDER - OTHER | Court User<br>Filed: 09/01/2022<br>*Received: 09/01/2022* | **Processed**<br>Confirmation Notice |
| 122 | NOTICE OF APPEARANCE (POST RJI) | Kushner, M.<br>Filed: 09/19/2022<br>*Received: 09/19/2022* | **Processed**<br>Confirmation Notice |
| 123 | LETTER / CORRESPONDENCE TO JUDGE<br>*Letter to Hon. Michael R. Cuevas* | Massey, D.<br>Filed: 09/19/2022<br>*Received: 09/19/2022* | **Processed**<br>Confirmation Notice |
| 124 | ORDER - OTHER<br>*Scheduling Order* | Court User<br>Filed: 09/20/2022<br>*Received: 09/20/2022* | **Processed**<br>Confirmation Notice |
| 125 | ORDER TO SHOW CAUSE ( PROPOSED )  (Motion #8)<br>*Proposed Order to Show Cause to Seal* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 126 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP  (Motion #8)<br>*Affirmation of Marcus Haggard in Support* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 127 | EXHIBIT(S)  - A  (Motion #8)<br>*Exhibit A - Records of Convictions* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 128 | EXHIBIT(S)  - B  (Motion #8)<br>*Exhibit B - Excerpts from September 7 Hearing Transcript - ERS v. RPNY* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 129 | EXHIBIT(S)  - C  (Motion #8)<br>*Exhibit C - Hatker Affidavit* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 130 | EXHIBIT(S)  - D  (Motion #8)<br>*Exhibit D - Letter Request to Judge re Hatker Affidavit* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 131 | EXHIBIT(S)  - E  (Motion #8)<br>*Exhibit E - Williams Affirmation in Opposition to Motion to Dismiss* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 132 | EXHIBIT(S)  - F  (Motion #8)<br>*Exhibit F - Williams Affirmation ISO Motion to Dissolve Automatic Stay* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 133 | MEMORANDUM OF LAW IN SUPPORT  (Motion #8)<br>*Memorandum of Law in Support* | Massey, D.<br>Filed: 09/28/2022<br>*Received: 09/28/2022* | **Processed**<br>Confirmation Notice |
| 134 | MEMORANDUM OF LAW IN OPPOSITION  (Motion #5)<br>*Plaintiffs' Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss the Complaint* | Massey, D.<br>Filed: 10/03/2022<br>*Received: 10/03/2022* | **Processed**<br>Confirmation Notice |
| 135 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION  (Motion #5)<br>*Affirmation of Rachel S. Mechanic in Opposition to Defendants' Partial Motion to Dismiss the Complai*<br>*... show more* | Massey, D.<br>Filed: 10/03/2022<br>*Received: 10/03/2022* | **Processed**<br>Confirmation Notice |
| 136 | EXHIBIT(S)  - A  (Motion #5)<br>*Exhibit A to Mechanic Affirmation - Affidavit of Melissa Hatker* | Massey, D.<br>Filed: 10/03/2022<br>*Received: 10/03/2022* | **Processed**<br>Confirmation Notice |
| 137 | EXHIBIT(S)  - A  (Motion #5) | | **Processed** |

137    EXHIBIT(S) - B  (Motion #5)                      Massey, D.                **Processed**
       *Exhibit B to Mechanic Affirmation - Letter Request*   Filed: 10/03/2022         Confirmation Notice
       *from T. Edward Williams, Counsel to MinedMap, dat*   *Received: 10/03/2022*
       *... show more*

138    EXHIBIT(S) - C  (Motion #5)                      Massey, D.                **Processed**
       *Exhibit C to Mechanic Affirmation - Affirmation of*   Filed: 10/03/2022         Confirmation Notice
       *T. Edward Williams in Opposition to Motion to Dis*   *Received: 10/03/2022*
       *... show more*

139    EXHIBIT(S) - D  (Motion #5)                      Massey, D.                **Processed**
       *Exhibit D to Mechanic Affirmation - Affirmation of*   Filed: 10/03/2022         Confirmation Notice
       *T. Edward Williams in Support of Memorandum of*   *Received: 10/03/2022*
       *La ... show more*

140    ORDER - OTHER                                    Court User                **Processed**
       *ORDER TO SHOW CAUSE*                             Filed: 10/05/2022         Confirmation Notice
                                                        *Received: 10/05/2022*

141    ORDER TO SHOW CAUSE ( PROPOSED )  (Motion        Massey, D.                **Processed**
       #9)                                              Filed: 10/13/2022         Confirmation Notice
       *Order to Show Cause on Motion to Compel*        *Received: 10/13/2022*

142    AFFIDAVIT OR AFFIRMATION IN SUPPORT OF           Massey, D.                **Processed**
       PROPOSED OSC/EXPARTE APP  (Motion #9)            Filed: 10/13/2022         Confirmation Notice
       *Affirmation of Rachel S. Mechanic*              *Received: 10/13/2022*

143    EXHIBIT(S) - A  (Motion #9)                      Massey, D.                **Processed**
       *Maranda 6.13.22 Affidavit (2022-905)*           Filed: 10/13/2022         Confirmation Notice
                                                        *Received: 10/13/2022*

144    EXHIBIT(S) - B  (Motion #9)                      Massey, D.                **Processed**
       *Maranda 6.22.22 Affidavit (Corrective) (2022-905)*   Filed: 10/13/2022     Confirmation Notice
                                                        *Received: 10/13/2022*

145    EXHIBIT(S) - C  (Motion #9)                      Massey, D.                **Processed**
       *Transcript of 6.27.22 Hearing*                  Filed: 10/13/2022         Confirmation Notice
                                                        *Received: 10/13/2022*

146    EXHIBIT(S) - D  (Motion #9)                      Massey, D.                **Processed**
       *Defendants' 7.1.22 Production Cover Letter and*   Filed: 10/13/2022        Confirmation Notice
       *Attachments*                                    *Received: 10/13/2022*

147    EXHIBIT(S) - E  (Motion #9)                      Massey, D.                **Processed**
       *Plaintiffs' 7.20.22 Letter to Defendants' Counsel*   Filed: 10/13/2022     Confirmation Notice
       *regarding Deficiencies in 7.1 Production*       *Received: 10/13/2022*

148    EXHIBIT(S) - F  (Motion #9)                      Massey, D.                **Processed**
       *7.21.22 Email from Defendants' Counsel*         Filed: 10/13/2022         Confirmation Notice
                                                        *Received: 10/13/2022*

149    EXHIBIT(S) - G  (Motion #9)                      Massey, D.                **Processed**
       *6.23.22 Deposition Transcript of Cristian Balan*   Filed: 10/13/2022       Confirmation Notice
                                                        *Received: 10/13/2022*

150    EXHIBIT(S) - H  (Motion #9)                      Massey, D.                **Processed**
       *10.1.22 and 10.3.22 Emails to Defendants'*      Filed: 10/13/2022         Confirmation Notice
       *Counsel regarding Status of Production*         *Received: 10/13/2022*



Document List

**Narrow By Options**

| | | |
|---|---|---|
| Document Type: | Please select... ▾ | Filed By: |
| | Please select... ▾ | |
| Motion Info: | Please select... ▾ | Filed Date: |
| | ☐ 📅 thru ☐ 📅 | |
| Document Number: | ☐ | |

[Display Document List with Motion Folders](#) 📁

**Sort By:** Doc # ▾

| # | Document | Filed By | Status |
|---|----------|----------|--------|
| 151 | EXHIBIT(S) - I (Motion #9)<br>*10.4.22 Letter from Defendants' Counsel* | Massey, D.<br>Filed: 10/13/2022<br>*Received: 10/13/2022* | **Processed**<br>Confirmation Notice |
| 152 | EXHIBIT(S) - J (Motion #9)<br>*10.5.22 Email to Defendants' Counsel regarding Deficiencies in Production* | Massey, D.<br>Filed: 10/13/2022<br>*Received: 10/13/2022* | **Processed**<br>Confirmation Notice |
| 153 | EXHIBIT(S) - K (Motion #9)<br>*10.6.22 Email to Defendants' Counsel Memorializing His Promise to Produce Additional Documents* | Massey, D.<br>Filed: 10/13/2022<br>*Received: 10/13/2022* | **Processed**<br>Confirmation Notice |
| 154 | EXHIBIT(S) - L (Motion #9)<br>*10.10.22 Email from Defendants' Counsel with Attachments* | Massey, D.<br>Filed: 10/13/2022<br>*Received: 10/13/2022* | **Processed**<br>Confirmation Notice |
| 155 | EXHIBIT(S) - M (Motion #9)<br>*Transcript of 9.7 Hearing (ERS v. RPDC - 2022-902)* | Massey, D.<br>Filed: 10/13/2022<br>*Received: 10/13/2022* | **Processed**<br>Confirmation Notice |
| 156 | EXHIBIT(S) - N (Motion #9)<br>*5.25.22 Email from El Gornati to Maranda* | Massey, D.<br>Filed: 10/13/2022<br>*Received: 10/13/2022* | **Processed**<br>Confirmation Notice |
| 157 | EXHIBIT(S) - O (Motion #9)<br>*7.14.22 Email from Bujala to Plaintiffs' Counsel with Attachments* | Massey, D.<br>Filed: 10/13/2022<br>*Received: 10/13/2022* | **Processed**<br>Confirmation Notice |
| 158 | MEMORANDUM OF LAW IN SUPPORT (Motion #9)<br>*Plaintiffs' Memorandum of Law In Support of Motion to Compel* | Massey, D.<br>Filed: 10/13/2022<br>*Received: 10/13/2022* | **Processed**<br>Confirmation Notice |
| 159 | LETTER / CORRESPONDENCE TO JUDGE (Motion #5) | Massey, D.<br>Filed: 10/17/2022<br>*Received: 10/17/2022* | **Processed**<br>Confirmation Notice |
| 160 | ORDER - OTHER<br>*Scheduling Order* | Court User<br>Filed: 10/18/2022<br>*Received: 10/18/2022* | **Processed**<br>Confirmation Notice |
| 161 | ORDER - OTHER<br>*Order to Show Cause* | Court User<br>Filed: 10/18/2022<br>*Received: 10/18/2022* | **Processed**<br>Confirmation Notice |
| 162 | ORDER - OTHER<br>*Order to Show Cause on Motion to Compel* | Court User<br>Filed: 10/18/2022<br>*Received: 10/18/2022* | **Processed**<br>Confirmation Notice |
| 163 | NOTICE OF WITHDRAWAL OF MOTION / ORDER TO SHOW CAUSE (Motion #8)<br>*Notice of Withdrawal of Motion* | Massey, D.<br>Filed: 10/28/2022<br>*Received: 10/28/2022* | **Processed**<br>Confirmation Notice |
| 164 | ORDER ( PROPOSED ) (Motion #9) | Haggard, M.<br>Filed: 11/03/2022<br>*Received: 11/03/2022* | **Processed**<br>Confirmation Notice |
| 165 | ORDER - OTHER | Court User<br>Filed: 11/04/2022<br>*Received: 11/03/2022* | **Processed**<br>Confirmation Notice |
| 166 | NOTICE OF MOTION (Motion #10)<br>*Notice of Motion - Motion to Compel Compliance with Discovery* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |
| 167 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #10)<br>*Affirmation of Rachel S. Mechanic in Support of Plaintiffs' Motion to Compel*<br>*Possible SSN Administratively Redacted* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |
| 168 | EXHIBIT(S) - A (Motion #10)<br>*8.29.22 Marshall Email* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |

| 169 | EXHIBIT(S) - B (Motion #10) | Massey, D. | Processed |
| | *8.30.22 Marshall Email* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 170 | EXHIBIT(S) - C (Motion #10) | Massey, D. | Processed |
| | *8.4.22 VCV Email* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 171 | EXHIBIT(S) - D (Motion #10) | Massey, D. | Processed |
| | *8.23.22 VCV Email* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 172 | EXHIBIT(S) - E (Motion #10) | Massey, D. | Processed |
| | *9.19.22 VCV Email* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 173 | EXHIBIT(S) - F (Motion #10) | Massey, D. | Processed |
| | *7.27.22 U-Mine Response to Subpoena* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 174 | EXHIBIT(S) - G (Motion #10) | Massey, D. | Processed |
| | *7.29.22 U-Mine Email* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 175 | EXHIBIT(S) - H (Motion #10) | Massey, D. | Processed |
| | *8.23.22 U-Mine Email* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 176 | EXHIBIT(S) - I (Motion #10) | Massey, D. | Processed |
| | *Affidavit of Paul Meddley* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 177 | EXHIBIT(S) - J (Motion #10) | Massey, D. | Processed |
| | *Shawn Marshall's Linkedin* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 178 | EXHIBIT(S) - K (Motion #10) | Massey, D. | Processed |
| | *Shawn Marshall's Telegram* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 179 | EXHIBIT(S) - L (Motion #10) | Massey, D. | Processed |
| | *FTI Report on U-Mine Website* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 180 | EXHIBIT(S) - M (Motion #10) | Massey, D. | Processed |
| | *Exhibit S Highlighted* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 181 | EXHIBIT(S) - N (Motion #10) | Massey, D. | Processed |
| | *Affidavit of Service - Marshall* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 182 | EXHIBIT(S) - O (Motion #10) | Massey, D. | Processed |
| | *7.21.22 Marshall Subpoena* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 183 | EXHIBIT(S) - P (Motion #10) | Massey, D. | Processed |
| | *8.23.22 Marshall Email (Petrus)* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 184 | EXHIBIT(S) - Q (Motion #10) | Massey, D. | Processed |
| | *Affidavit of Service - VCV Digital Subpoena* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 185 | EXHIBIT(S) - R (Motion #10) | Massey, D. | Processed |
| | *VCV Certificate of Authority* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 186 | EXHIBIT(S) - S (Motion #10) | Massey, D. | Processed |
| | *Kentucky Secretary of State Online Business Filings - VCV* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 187 | EXHIBIT(S) - T (Motion #10) | Massey, D. | Processed |
| | *Kentucky Secretary of State Online Business Filings - Umine LLC* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 188 | EXHIBIT(S) - U (Motion #10) | Massey, D. | Processed |
| | *7.22.21 Subpoena to VCV* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 189 | EXHIBIT(S) - V (Motion #10) | Massey, D. | Processed |
| | *7.27.22 - VCV's Response to Subpoena* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 190 | EXHIBIT(S) - W (Motion #10) | Massey, D. | Processed |
| | *Affidavit of Service for Umine Subpoena* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 191 | EXHIBIT(S) - X (Motion #10) | Massey, D. | Processed |
| | *Umine - Kentucky Subpoena* | Filed: 11/07/2022 | Confirmation Notice |
| | | *Received: 11/07/2022* | |

| 192 | EXHIBIT(S) - Y (Motion #10)<br>*VCV Email* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |
|---|---|---|---|
| 193 | EXHIBIT(S) - Z (Motion #10)<br>*Customer List* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |
| 194 | EXHIBIT(S) - AA (Motion #10)<br>*Value Chain Ventures LLC - Bill of Sales* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |
| 195 | MEMORANDUM OF LAW IN SUPPORT (Motion #10)<br>*Memorandum of Law in Support of Plaintiffs' Motion to Compel Compliance with Discovery* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |
| 196 | NOTICE OF DEPOSITION<br>*Notice to Take Deposition Upon Oral Examination of Michael Maranda* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |
| 197 | NOTICE OF DEPOSITION UPON ORAL EXAMINATION<br>*Notice to Take Deposition of Michael Maranda LLC Upon Oral Examination of Person(s) Most Knowledgeab … show more* | Massey, D.<br>Filed: 11/07/2022<br>*Received: 11/07/2022* | **Processed**<br>Confirmation Notice |
| 198 | NOTICE OF MOTION (AMENDED) (Motion #10) | Massey, D.<br>Filed: 11/09/2022<br>*Received: 11/09/2022* | **Processed**<br>Confirmation Notice |
| 199 | AFFIRMATION/AFFIDAVIT OF SERVICE (Motion #10)<br>*Affirmation of Service of Motion to Compel Compliance with Discovery on Shawn Marshall* | Massey, D.<br>Filed: 11/11/2022<br>*Received: 11/11/2022* | **Processed**<br>Confirmation Notice |
| 200 | AFFIRMATION/AFFIDAVIT OF SERVICE (Motion #10)<br>*Affidavit of Service of Motion to Compel Compliance with Discovery on VCV Digital Group* | Massey, D.<br>Filed: 11/11/2022<br>*Received: 11/11/2022* | **Processed**<br>Confirmation Notice |
| 201 | AFFIRMATION/AFFIDAVIT OF SERVICE (Motion #10)<br>*Affidavit of Service of Motion to Compel Compliance with Discovery on Umine LLC* | Massey, D.<br>Filed: 11/14/2022<br>*Received: 11/14/2022* | **Processed**<br>Confirmation Notice |
| 202 | NOTICE OF CROSS-MOTION (Motion #11) | Glickman, B.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 203 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION AND IN SUPPORT OF CROSS-MOTION (Motion #11) | Glickman, B.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 204 | MEMORANDUM IN OPPOSITION TO MOTION AND IN SUPPORT OF CROSS-MOTION (Motion #11) | Glickman, B.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 205 | NOTICE OF CROSS-MOTION (Motion #12) | Petrus, P.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 206 | AFFIRMATION/AFFIDAVIT OF SERVICE (Motion #12) | Petrus, P.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 207 | EXHIBIT(S) - A-E (Motion #12)<br>*Exhibits A-E* | Petrus, P.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 208 | NOTICE OF CROSS-MOTION (Motion #13) | Petrus, P.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 209 | AFFIRMATION/AFFIDAVIT OF SERVICE (Motion #13) | Petrus, P.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 210 | EXHIBIT(S) - A-C (Motion #13)<br>*Exhibits A-C* | Petrus, P.<br>Filed: 12/05/2022<br>*Received: 12/05/2022* | **Processed**<br>Confirmation Notice |
| 211 | MEMORANDUM OF LAW IN OPPOSITION TO CROSS-MOTION AND IN FURTHER SUPPORT OF MOTION (Motion #10)<br>*Reply Memorandum of Law in Further Support of Motion and in Opposition to Cross Motions* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 212 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO CROSS-MOTION AND IN FURTHER SUPPORT OF MOTION (Motion #10)<br>*Reply Affirmation of Rachel Mechanic in Further Support of Motion and in Opposition to Cross* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |

Support of Motion and in Opposition to Cross
Motion

| | | | |
|---|---|---|---|
| 213 | EXHIBIT(S) - A  (Motion #10)<br>*Letter from Maranda to VCV re Canceling Hosting Agreement* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 214 | EXHIBIT(S) - B  (Motion #10)<br>*Deposit statement and emails among Maranda, Marshall and Matt Feast* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 215 | EXHIBIT(S) - C  (Motion #10)<br>*Copy of Invoice from RPNY Holdings to VCV and Emails between Maranda and Feast* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 216 | EXHIBIT(S) - D  (Motion #10)<br>*Email Exchange between Matt Feast and Michael Maranda* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 217 | EXHIBIT(S) - E  (Motion #10)<br>*Email and Invoice from Marshall-Umine to RPNY-Maranda* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 218 | EXHIBIT(S) - F  (Motion #10)<br>*Bills of Lading from Umine to Rouses Point Facility* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 219 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO CROSS-MOTION AND IN FURTHER SUPPORT OF MOTION  (Motion #10)<br>*Reply Affirmation of Norton Cutler in Further Support of Motion and in Opposition to Cross Motions* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 220 | EXHIBIT(S) - A  (Motion #10)<br>*Email from Norton Cutler to Paul Petrus re Complaint* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 221 | EXHIBIT(S) - B  (Motion #10)<br>*December 7 and December 9 Emails to VCV re Stipulation* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 222 | EXHIBIT(S) - C  (Motion #10)<br>*December 3, 7 and 9 Emails to Umine re Stipulation* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 223 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO CROSS-MOTION AND IN FURTHER SUPPORT OF MOTION  (Motion #10)<br>*Affidavit of John Coryea in Further Support of Motion and in Opposition to Cross Motions* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 224 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO CROSS-MOTION AND IN FURTHER SUPPORT OF MOTION  (Motion #10)<br>*Affidavit of Shane Bigelow in Further Support of Motion and in Opposition to Cross Motions* | Massey, D.<br>Filed: 12/09/2022<br>*Received: 12/09/2022* | **Processed**<br>Confirmation Notice |
| 225 | NOTICE OF APPEARANCE (POST RJI) | | *Returned For Correction* |

**Narrow By Options**

| Document Type: | Please select... | Filed By: |
| Please select... | | |
| Motion Info: | Please select... | Filed Date: |
| | thru | |
| Document Number: | | |

[Display Document List with Motion Folders]

---

**Sort By:** Doc #

| # | Document | Filed By | Status |
|---|----------|----------|--------|
| 226 | NOTICE OF APPEARANCE (POST RJI) | | *Returned For Correction* |
| 227 | ORDER TO SHOW CAUSE ( PROPOSED ) (Motion #14) *ORDER TO SHOW CAUSE - MOTION FOR ENTRY OF AN ORDER STRIKING DEFENDANTS ANSWER; ENTERING DEFAULT JUDG ... show more* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 228 | MEMORANDUM OF LAW IN SUPPORT (Motion #14) *MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER STRIKING DEFENDANTS ANSWER; ENTERING DE ... show more* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 229 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #14) *AFFIRMATION OF RACHEL S. MECHANIC IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER STRIKING DEFENDANTS ANS ... show more* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 230 | EXHIBIT(S) - A (Motion #14) *Plaintiffs Counsels 11.7 Email to Defendants Counsel attaching Deposition Notices* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 231 | EXHIBIT(S) - B (Motion #14) *Defendants' Counsel's 11.14 Email Rescheduling 11.18 Deposition* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 232 | EXHIBIT(S) - C (Motion #14) *Defendants' Counsel's 11.18 Email Rescheduling November 21 Deposition* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 233 | EXHIBIT(S) - D (Motion #14) *Defendants' Counsel's 11.29 Email* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 234 | EXHIBIT(S) - E (Motion #14) *Plaintiffs' Counsel's 11.30 Email to Court Requesting Conference* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 235 | EXHIBIT(S) - F (Motion #14) *11.30 Response from Court re Conference* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 236 | EXHIBIT(S) - G (Motion #14) *Spreadsheets re Defendants' Hosting Agreements, Emails and Text Messages* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 237 | EXHIBIT(S) - H (Motion #14) *Emails between Plaintiffs and Defendants concerning the shipment of Plaintiffs miners to Defendants* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 238 | EXHIBIT(S) - I (Motion #14) *Excerpt from Balan Deposition Transcript* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 239 | EXHIBIT(S) - J (Motion #14) *Email exchanges produced by Balan sent to or from Maranda or his associates* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 240 | EXHIBIT(S) - K (Motion #14) *Email exchanges produced by Balan regarding the sale and shipment of miners* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 241 | EXHIBIT(S) - L (Motion #14) *Spreadsheet produced by Balan concerning the amounts owed by Maranda to AMB LLC* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |
| 242 | EXHIBIT(S) - M (Motion #14) *Email exchanges produced by Christian Balan that were sent to or from Maranda or his associates conc ... show more* | Massey, D. Filed: 12/16/2022 Received: 12/16/2022 | **Processed** Confirmation Notice |

| | | | |
|---|---|---|---|
| 243 | EXHIBIT(S) - N (Motion #14)<br>*Email exchanges between Maranda and BIT Intelligence concerning BIT Intelligences request for an aud ... show more* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 244 | EXHIBIT(S) - O (Motion #14)<br>*Documents produced by Balan concerning transactions and correspondence between Umine and Maranda* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 245 | EXHIBIT(S) - P (Motion #14)<br>*Email produced by Balan from Maranda regarding the shipment of miners* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 246 | EXHIBIT(S) - Q (Motion #14)<br>*Printout of the URL httpsuminellc.comwhatsminer-m31s- as of December 16, 2022* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 247 | EXHIBIT(S) - R (Motion #14)<br>*Excerpts from Deposition Transcript of Cristian Balan* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 248 | EXHIBIT(S) - S (Motion #14)<br>*Email produced by Michael Carter, Marandas associate, pursuant to a Subpoena issued by Plaintiffs* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 249 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #14)<br>*AFFIRMATION OF NORTON CUTLER IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER STRIKING DEFENDANTS ANSWER; ... show more* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 250 | EXHIBIT(S) - A (Motion #14)<br>*November 18, 2022 email exchange between counsel (Ex A to Cutler Aff)* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 251 | EXHIBIT(S) - B (Motion #14)<br>*November 28, 2022 email to Mr. Kushner and his response thereto (Ex B to Cuttler Aff)* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 252 | EXHIBIT(S) - C (Motion #14)<br>*November 28, 2022 email to Mr. Kushner and his response thereto (Ex C to Cutler Aff)* | Massey, D.<br>Filed: 12/16/2022<br>*Received: 12/16/2022* | **Processed**<br>Confirmation Notice |
| 253 | STIPULATION - DISCOVERY (Motion #10) | Massey, D.<br>Filed: 12/19/2022<br>*Received: 12/19/2022* | **Processed**<br>Confirmation Notice |
| 254 | STIPULATION - DISCOVERY (Motion #10)<br>*Stipulation - Discovery - VCV Digital* | Massey, D.<br>Filed: 12/21/2022<br>*Received: 12/21/2022* | **Processed**<br>Confirmation Notice |
| 255 | ORDER TO SHOW CAUSE (Motion #14) | Court User<br>Filed: 12/27/2022<br>*Received: 12/23/2022* | **Processed**<br>Confirmation Notice |
| 256 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION (Motion #14) | Kushner, M.<br>Filed: 01/26/2023<br>*Received: 01/26/2023* | **Processed**<br>Confirmation Notice |
| 257 | MEMORANDUM OF LAW IN REPLY (Motion #14)<br>*Reply Memorandum of Law in Further Support of Motion* | Massey, D.<br>Filed: 01/30/2023<br>*Received: 01/30/2023* | **Processed**<br>Confirmation Notice |
| 258 | AFFIDAVIT OR AFFIRMATION IN REPLY (Motion #14)<br>*Affidavit of Ofunne N. Edoziem in Further Support of Motion* | Massey, D.<br>Filed: 01/30/2023<br>*Received: 01/30/2023* | **Processed**<br>Confirmation Notice |
| 259 | EXHIBIT(S) - A (Motion #14)<br>*Purchase Orders from Kaboomracks* | Massey, D.<br>Filed: 01/30/2023<br>*Received: 01/30/2023* | **Processed**<br>Confirmation Notice |
| 260 | AFFIDAVIT OR AFFIRMATION IN REPLY (Motion #14)<br>*Affidavit of Jeremiah Brooks in Further Support of Motion* | Massey, D.<br>Filed: 01/30/2023<br>*Received: 01/30/2023* | **Processed**<br>Confirmation Notice |
| 261 | AFFIDAVIT OR AFFIRMATION IN REPLY (Motion #14)<br>*Affidavit of Corey Dozhier in Further Support of Motion* | Massey, D.<br>Filed: 01/30/2023<br>*Received: 01/30/2023* | **Processed**<br>Confirmation Notice |
| 262 | EXHIBIT(S) - A (Motion #14)<br>*Invoice for Miners dated January 15 2022* | Massey, D.<br>Filed: 01/30/2023<br>*Received: 01/30/2023* | **Processed**<br>Confirmation Notice |
| 263 | ORDER - OTHER (Motion #14) *Corrected*<br>*Order Conditionally Granting Motion* | Court User<br>Filed: 02/06/2023<br>*Received: 02/06/2023* | **Processed**<br>Confirmation Notice |

| 264 | NOTICE OF DEPOSITION UPON ORAL EXAMINATION<br>*Notice to Take Deposition - Michael Maranda* | Massey, D.<br>Filed: 02/06/2023<br>*Received: 02/06/2023* | **Processed**<br>Confirmation Notice |
| --- | --- | --- | --- |
| 265 | NOTICE OF DEPOSITION UPON ORAL EXAMINATION<br>*Notice to Take Deposition - Michael Maranda LLC* | Massey, D.<br>Filed: 02/06/2023<br>*Received: 02/06/2023* | **Processed**<br>Confirmation Notice |
| 266 | NOTICE OF DEPOSITION UPON ORAL EXAMINATION<br>*Notice to Take Deposition - Michael Maranda LLC* | Massey, D.<br>Filed: 02/16/2023<br>*Received: 02/16/2023* | **Processed**<br>Confirmation Notice |

Case 1:22-cv-23362-KMW   Document 17-1   Entered on FLSD Docket 03/13/2023   Page 96 of 121

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SCHENECTADY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
BIT INTELLIGENCE, LLC, and                          :
BIT INTELLIGENCE LTD,                               :
                                                    :   Index No. _____
            Plaintiffs,                             :
                                                    :
        v.                                          :
                                                    :
MICHAEL MARANDA, and                                :   <u>**COMPLAINT**</u>
MICHAEL MARANDA LLC,                                :
                                                    :   **JURY TRIAL DEMANDED**
                                                    :
            Defendants.                             :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs BIT Intelligence, LLC and BIT Intelligence Ltd. (collectively, "Plaintiffs" or "BIT Intelligence") as and for their complaint against Defendants Michael Maranda ("Maranda") and Michael Maranda LLC ("MMLLC") (collectively, "Defendants") allege as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiffs bring this action to require Defendants to return tens of millions of dollars' worth of converted Bitcoin mining equipment or, alternatively, to pay Plaintiffs the fair market value of the equipment, as well as lost profits resulting directly from Defendants' conversion of Plaintiffs' property.

2.      Plaintiffs are established Bitcoin mining companies that own Bitcoin mining equipment ("Miners").

3.      Defendant Maranda and his company, Defendant MMLLC, purport to be Bitcoin farmers—individuals and entities that provide Miner hosting facilities and services to Bitcoin mining clients such as Plaintiffs. In reality, however, Defendants are not legitimate Bitcoin

Case 1:22-cv-23362-KMW   Document 17-1   Entered on FLSD Docket 03/13/2023   Page 97 of 121

farmers. Instead, and upon information and belief, they have unlawfully converted Plaintiffs' Miners.

4.      Pursuant to agreements between Plaintiffs and Defendant MMLLC—under which MMLLC agreed to provide certain services to Plaintiffs, including the provision of commercially reasonable security for their Miners—beginning in September 2021, Plaintiffs sent thousands of their Miners, worth almost $40 million dollars, to facilities under Defendants' control. While under Defendant MMLLC's custody, over 3,000 of those Miners have disappeared without justification or explanation from Defendants, who to date have steadfastly refused to return the Miners to Plaintiffs or to even provide any information as to their whereabouts.

5.      Defendant MMLLC served as Defendant Maranda's alter ego in that Defendant Maranda so dominated MMLLC and used it as the vehicle through which he could carry out his unlawful dealings.

6.      This case, therefore, concerns (1) Defendants' unlawful conversion of at least approximately 3,692 of Plaintiffs' Miners—worth approximately $22,223,634; (2) Plaintiffs' lost income of at least approximately $9,000,000 resulting directly from Defendants' conversion of Plaintiffs' property; (3) multiple material breaches of Defendants' obligations under the parties' agreements; and (4) Maranda's use of Defendant MMLLC to perpetrate a wrong against Plaintiffs.

## PARTIES

7.      Plaintiff BIT Intelligence LLC is a limited liability company, duly organized and existing under the laws of the State of Delaware, with branches in California and Colorado.

8.      Plaintiff BIT Intelligence Limited is a company duly organized and existing under the laws of the British Virgin Islands.

9.      Defendant Maranda is a resident of the State of New York who resides at 38 Oaklawn Avenue, Farmingville, New York 11738.

2

Case 1:22-cv-23362-KMW   Document 17-1   Entered on FLSD Docket 03/13/2023   Page 98 of 121

10.     Defendant MMLLC is a limited liability company duly organized and existing under the laws of the State of New York with its principal place of business in East Patchogue, New York. Defendant Maranda is the principal and managing member of Defendant MMLLC.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Defendants pursuant to New York C.P.L.R. §§ 301 and 302 because Defendant MMLLC is registered to do business, and regularly conducts business, in the State of New York and Defendant Maranda is a resident of the State of New York, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the State of New York, causing injury in this State and resulting in the claims herein.

12.     Venue is proper in Schenectady County because the parties agreed to jurisdiction in this Court in the Mining Hosting Services Agreements.  *See* CPLR § 501.

## FACTUAL ALLEGATIONS

**A.**      **Defendant MMLLC Contractually Obligates Itself to Provide Plaintiffs with Cryptocurrency Miner Hosting Services at Defendant MMLLC's Facilities in New York.**

13.     Plaintiffs own tens of thousands of Miners that are hosted at facilities around the world.

14.     In the summer of 2021, Plaintiffs were introduced to Defendant Maranda through a mutual business associate at a Miner hosting company that Plaintiffs have used for Miner hosting services, and in which Defendant Maranda has an ownership interest.

15.     Soon thereafter, Defendant Maranda initiated discussions with Plaintiffs during which he offered Miner hosting services to Plaintiffs through Defendant MMLLC, a company that he controls.

3

Case 1:22-cv-23362-KMW   Document 17-1   Entered on FLSD Docket 03/13/2023   Page 99 of 121

### (1)   Plaintiffs and Defendant MMLLC Enter into Oswego Agreement.

16.     On June 27, 2021, Plaintiffs and Defendant MMLLC executed the Mining Hosting Services Agreement (the "Oswego Agreement").

17.     Defendant MMLLC's Oswego facility is located in Oswego, New York.

18.     Pursuant to the Oswego Agreement, Defendant MMLLC agreed to provide to Plaintiffs at its Oswego facility, among other things: (1) various hosting services; and (2) at least four megawatts of power.

19.     In return, Plaintiffs agreed to pay Defendant a fee per kilowatt hour used by the Miners hosted at the Oswego facility; a share of the Bitcoin mined by Plaintiffs' Miners hosted at the Oswego facility; and a $129,600 deposit.

20.     Plaintiffs paid Defendant MMLLC the $129,600 deposit upon execution of the Oswego Agreement on June 27, 2021.

### (2)   Plaintiffs and Defendant MMLLC Enter into Plattsburgh/RP Agreement.

21.     On July 6, 2021, Plaintiffs and Defendant MMLLC executed a second Mining Hosting Services Agreement (the "Plattsburgh/RP Agreement").

22.     Defendant MMLLC's Rouses Point facility ("RP facility") is located in Rouses Point, New York, and its Plattsburgh facility is located in Plattsburgh, New York. The RP and Plattsburgh facilities were still in development at the time of the execution of the Plattsburgh/RP Agreement and are in close geographical proximity.

23.     Pursuant to an agreement between the parties, Plaintiffs would send their Miners to the RP facility and Defendant Maranda would, thereafter, determine the appropriate distribution of Plaintiffs' Miners between the RP and Plattsburgh facilities at his discretion.

4

24.     Pursuant to the Plattsburgh/RP Agreement, Defendant MMLLC agreed to provide at the Plattsburgh and RP facilities, among other things: (1) various hosting services; and (2) at least twenty megawatts of power.

25.     As consideration, Plaintiffs agreed to pay Defendant a fee per kilowatt hour used by the Miners at the RP and Plattsburgh facilities; a share of the Bitcoin mined by Plaintiffs' Miners hosted at the RP and Plattsburgh facilities; and a $1,300,000 deposit.

26.     Plaintiffs paid Defendant MMLLC the $1,300,000 deposit required under the Plattsburgh/RP Agreement.

### (3)     Plaintiffs and Defendant MMLLC Enter into Rouses Point Agreement.

27.     On July 22, 2021, Plaintiffs and Defendant MMLLC executed a third Mining Hosting Services Agreement (the "Rouses Point Agreement").

28.     Pursuant to the Rouses Point Agreement, Defendant MMLLC agreed to provide to Plaintiffs at its RP facility, among other things: (1) various hosting services; and (2) ten more megawatts of power in addition to the twenty megawatts of power that Defendant had already agreed to provide to Miners at the RP facility pursuant to the Plattsburgh/RP agreement.

29.     In return, Plaintiffs agreed to pay Defendant a fee per kilowatt hour used by the Miners hosted at the RP facility; a share of the Bitcoin mined by Plaintiffs' Miners hosted at the RP facility; and a $650,000 deposit.

30.     Plaintiffs paid Defendant MMLLC the $650,000 deposit upon execution of the Rouses Point Agreement on July 22, 2021.

### (4)     Defendant MMLLC's Obligations Common to All Agreements.

31.     Under each of the aforementioned Mining Hosting Services Agreements (collectively, the "Agreements"), Defendant MMLLC contractually obligated itself to, among

5

Case 1:22-cv-23362-KMW   Document 17-1   Entered on FLSD Docket 03/13/2023   Page 101 of 121

other things: (i) "set up, rack and install any successfully functioning and/or repaired Miners within one (1) business day of receipt" (Agreements § 2(c)); (ii) "provide monitoring of the functionality of the Miners on a continuing basis" (*id.* § 2(d)); (iii) "promptly notify Client in writing of any functional issues with or damage to the Miners, with a description of any repairs that are anticipated to be necessary to bring the Miner to appropriate functionality" (*id.*); (iv) oversee repairs, which were not to "be commenced until authorization is received by the Client to proceed" (*id.* § 2(f)); (v) "promptly notify" Plaintiffs if there was an "interruption of service" (*id.* § 2(c)); and (vi) provide "commercially reasonable security" at the facilities (*id.*).

32.     As the principal member of Defendant MMLLC, Defendant Maranda is liable for Defendant MMLLC's violations of the Agreements.

33.     As alleged below, Defendants violated each of these provisions (and violated a number of them on multiple occasions).

**B.     Plaintiffs Send Their Miners to Facilities Under Defendants' Control**

34.     In September 2021, Plaintiffs began sending Miners to facilities under Defendants' control pursuant to the Agreements.

35.     Specifically, on September 6, 2021, Plaintiffs caused 1,200 of their M30 Miners (which, along with Plaintiffs' M31S+ Miners, are referred to herein as "M-Series" Miners) to be delivered to the RP facility.

36.     That same day, Defendant Maranda confirmed via text message that Plaintiffs' 1,200 M-Series Miners were received at the RP facility.

37.     Also on September 6, 2021, Plaintiffs caused 1,080 of their S19j Pro ("S-Series") Miners to be delivered to the Oswego facility.

38.     That same day, Defendant Maranda confirmed via text message that Plaintiffs' 1,080 S-Series Miners were received at the Oswego facility.

6

Case 1:22-cv-23362-KMW   Document 17-1   Entered on FLSD Docket 03/13/2023   Page 102 of 121

39.     On September 15, 2021, Plaintiffs caused 1,450 of their M-Series Miners to be delivered to the RP facility.

40.     That same day, Defendant Maranda confirmed via text message that Plaintiffs' 1,450 M-Series Miners were received at the RP facility.

41.     On November 16, 2021, Plaintiffs caused 700 of their M-Series Miners to be delivered to the RP facility.

42.     On November 17, 2021, Plaintiffs caused 750 of their M-Series Miners to be delivered to the RP facility.

43.     Delivery of the November 16 and 17, 2021 shipments was confirmed on a signed bill of lading.

44.     On December 20, 2021, Plaintiffs caused 624 of their S-Series Miners to be delivered to the RP facility.  Delivery of the December 20, 2021 shipment was confirmed on a signed bill of lading.

45.     On January 10, 2022, Plaintiffs caused 896 of their M-Series Miners to be delivered to the RP facility.  Delivery of the January 10, 2022 shipment was confirmed on a signed bill of lading.

46.     On January 14, 2022, Plaintiffs caused 768 of their M-Series Miners to be delivered to the RP facility.  Delivery of the January 14, 2022 shipment was confirmed on a signed bill of lading.

47.     In or around late September or early October 2021, Plaintiffs requested that Defendants return 1,100 of Plaintiffs' Miners from the RP facility to Plaintiffs' facility in Colorado Springs, CO, as they were not able to be utilized at Defendants' facilities due to construction delays and delays in obtaining the requisite electricity necessary for operation.

7

48.     On October 20, 2021, Plaintiffs received 700 of their M-Series Miners from Defendants at their Colorado Springs, CO facility pursuant to Plaintiffs' request that Defendants return 1,100 of their Miners.

49.     On November 20, 2021, Plaintiffs received an additional 224 M-Series Miners from Defendants at their facility in Colorado Springs, CO pursuant to Plaintiffs' request that Defendants return 1,100 of Plaintiffs' Miners. As of this date, Defendants had returned a total of 924 of the 1,100 Miners that Plaintiffs had requested.

50.     In total, between September 2021 and January 2022, Plaintiffs sent 6,388 Miners to the RP and Plattsburgh facilities and 1,080 Miners to the Oswego facility, for a total of 7,468 Miners.

51.     Over that same time period, Defendants returned to Plaintiffs 924 of their Miners from the RP facility.

52.     Accordingly, as of January 2022, there should have been 5,464 of Plaintiffs' Miners (worth at least approximately $31,408,480) at the RP and Plattsburgh facilities, and 1,080 of Plaintiffs' Miners (worth at least approximately $7,182,000) at the Oswego facility.

**C.      Plaintiffs Discover that Thousands of their M-Series Miners are Missing from the RP and Plattsburgh Facilities.**

53.     Throughout January and February 2022, Defendant Maranda continued to ask Plaintiffs to send additional Miners to facilities under Defendants' control.

54.     Plaintiffs, however, grew increasingly concerned that many of the Miners they sent to facilities under Defendants' control over the previous five months had not been plugged in and made operational (in violation of, at a minimum, Section 2(c) of the Agreements).

8

Case 1:22-cv-23362-KMW   Document 17-1   Entered on FLSD Docket 03/13/2023   Page 104 of
121

55.     Accordingly, on February 7, 2022, Plaintiffs sent an email to Defendant Maranda requesting a formal inventory of all of Plaintiffs' Miners that were on site at the RP, Plattsburgh, and Oswego facilities.

56.     On or about February 22, 2022, Defendant Maranda sent an email to Plaintiffs containing the results of his purported "audit."

57.     In that email, Defendant Maranda provided a purported tally of the total number of Plaintiffs' *operational* Miners located at all three of the facilities under Defendants' control. Defendant Maranda conspicuously failed to provide the *entire count* of Plaintiffs' Miners on site, as Plaintiffs had requested.

58.     Defendant Maranda stated further in that email that he was "scanning [] the rest of these units once there [sic] racked this week and will update a final inventory list within 2 weeks."

59.     Defendant Maranda thus admitted that Defendants had failed to set up and rack operational Miners within one day of receipt, as was their obligation under Section 2(c) of the Agreements.

60.     Following receipt of Defendant Maranda's February 22, 2022, email, Plaintiffs resolved to conduct their own count of their Miners on site at Defendants' facilities.

61.     On March 1, 2022, Plaintiffs dispatched two of their employees to the RP and Plattsburgh facilities to conduct on-site audits.

62.     Plaintiffs' audit revealed that Defendants provided woefully insufficient security at the RP facility, in contravention of their obligation to provide "commercially reasonable security" under Section 2(c) of the Agreements.  Specifically, the RP facility—a sprawling warehouse facility located on a large parcel of land—was protected by a simple padlock on an outside gate, no security guards, and very few, if any, functioning video surveillance cameras in place.  Further,

9

Plaintiffs' personnel discovered through their audit and subsequent investigation that numerous contractors had unescorted and unsupervised access to the facility.

63.     These deficiencies establish that the RP facility, which housed tens of millions of dollars of Plaintiffs' sensitive equipment, lacked the "commercially reasonable security" that the Agreements promised.

64.     In addition, Plaintiffs' personnel located only 2,553 of Plaintiffs' M-Series Miners at the RP and Plattsburgh facilities during their audit (meaning that a total of 2,287 M-Series Miners were unaccounted for at the RP and Plattsburgh facilities).

65.     The fact that over 2,000 Miners were missing from facilities under Defendants' control would have been difficult—if not impossible—for Defendants to have overlooked. Each machine weighs approximately 25 pounds, and Plaintiffs' Miners accounted for approximately 70% of all the available power in the facilities, meaning that their (1) disappearance would have been obvious, and (2) removal would have required a prolonged, coordinated effort requiring the use of heavy machinery and trucks.

66.     Defendants, however, never notified Plaintiffs that a single Miner was missing— let alone thousands of them—and Plaintiffs would not have discovered that more than 2,000 of their Miners had disappeared had they not conducted their own on-site tally.

67.     Defendant Maranda tried to hide both the fact of the missing Miners and the number of missing Miners from Plaintiffs, and later took steps to obstruct Plaintiffs' efforts to locate the Miners because, upon information and belief, he intentionally engaged in the unlawful conversion of the Miners.

68.     Defendants breached their obligations under the Agreements by, at a minimum, failing to: (i) "[M]onitor[] the functionality of the Miners on a continuing basis" (Agreements §

10

FILED: SCHENECTADY COUNTY CLERK 05/10/2022 05:53 PM INDEX NO. 2022-749

NYSCEF DOC. NO. 2 Case 1:22-cv-23362-KMW  Document 17-1  Entered on FLSD Docket 03/13/2023  Page 106 of RECEIVED NYSCEF: 05/10/2022
121

2(d)); (ii) "promptly notify [Plaintiffs] in writing of any functional issues with . . . the Miners . . ." (*id*.); and (iii) "promptly notify [Plaintiffs if there was an] interruption of service" (*id*. § 2(c)).

69.    In addition, Plaintiffs' personnel took photographs of the Miners that were, in fact, located at the RP and Plattsburgh facilities at the time of their audit. These photographs showed that full pallets of Plaintiffs' Miners were still sitting in boxes despite having been delivered weeks or months before. These photographs additionally demonstrate Defendants' failure to set up the Miners at the facilities within one day of receipt, as required under Section 2(c) of the Agreements.

**D.    Defendants Conceal that an Additional 624 of Plaintiffs' S-Series Miners Disappeared from the RP Facility.**

70.    Shortly after the completion of Plaintiffs' audit, on March 4, 2022, Cristian Balan, Defendant MMLLC's Facility Manager, observed that 624 of Plaintiffs' S-Series Miners were on pallets in the repair room at the RP facility. Although Section 2(d) of the operative Agreement required Defendants to notify Plaintiffs if any Miners needed repairs, no such prior notice was provided.

71.    Moreover, according to Balan, when he arrived at the RP facility on Monday morning, March 7, 2022, the 624 S-Series Miners were missing from the repair room, having had inexplicitly disappeared over the prior weekend.

72.    Accordingly, as of March 7, 2022, 2,287 of Plaintiffs' M-Series Miners and 624 of Plaintiffs' S-Series Miners—2,911 Miners in total—were missing from the RP and Plattsburgh facilities.

73.    That same day (March 7, 2022), Balan sent an email to Defendant Maranda notifying him that 624 of Plaintiffs' S-Series Miners were missing. Despite at this time being in regular contact with Plaintiffs over the other missing Miners, Defendants never notified Plaintiffs of the disappearance of these S-Series Miners.

74.     Defendants' failure to notify Plaintiffs of the disappearance of 624 additional Miners was, at a minimum, a violation of Sections 2(c) and (d) of the Agreements, which require Defendants to "promptly notify [Plaintiff] in writing of any functional issues with . . . the Miners . . ." (*id*. 2(d)), and "promptly notify [Plaintiff if there was an] interruption of service" (*id*. 2(c)).

75.     In addition, Defendants failed to take additional appropriate steps in response to the disappearance of Plaintiffs' Miners, such as notifying law enforcement.  Upon information and belief, Defendants failed to take these obvious steps because they were intentionally engaged in the conversion of the Miners.

**E.      Plaintiffs Inquire About the 2,287 M-Series Miners Missing from the RP and Plattsburgh Facilities, Yet Defendant Maranda Provides Incomplete Responses.**

76.     On March 10, 2022, Plaintiffs sent an email to Defendant Maranda and Balan inquiring about the 2,287 M-Series Miners that were discovered to be missing during Plaintiffs' audit.  (As Plaintiffs were still unaware of the disappearance of the 624 S-Series Miners as of this date, their March 10 email only addressed the missing M-Series Miners that they knew about.)

77.     Plaintiffs' email included evidence of delivery at the facilities under Defendants' control for the 2,287 missing M-Series Miners and demanded that Defendants account for the Miners no later than March 17, 2022.

78.     Having received no response to their March 10 email from Defendant Maranda, Plaintiffs sent a follow-up email on March 14, 2022.

79.     Defendant Maranda replied to Plaintiffs' emails on March 15, 2022. In that email, Defendant Maranda admitted that some of Plaintiffs' Miners were missing. Defendant Maranda further stated that he had conducted an "internal audit" that consisted of "checking email, text messages, inventory sheets, and interviewing our employees and contractors," and that he intended to "conduct a full investigation and possibly hire an external investigator to further look into the

12

possibility that some miners might have been stolen." Defendant Maranda also admitted that the facilities' "inventory room's procedures and manning back in the September and October time frame were less than adequate." Defendant Maranda further stated that he intended to "identify the missing units, and if we cannot locate, we will submit a claim to our insurance company."

80. Although Maranda knew from his March 7, 2022 communications with Balan that 624 of Plaintiffs' S-Series Miners were also missing from the RP facility, Defendant Maranda failed to inform Plaintiffs of that fact in his March 15 email, in breach of his obligation to do so under the operative Agreement, which requires Defendants to "promptly notify [Plaintiffs if there was an] interruption of service" (Agreements § 2(c)).

81. Defendant Maranda's March 15 email also noted that 145 of Plaintiffs' missing 2,287 M-Series Miners were purportedly "shipped to repair in North Carolina in September." Prior to this email, however, Defendants had failed to obtain permission from Plaintiffs to send the units for repair, which constituted, at a minimum, a breach of Sections 2(d) and (f) of the Agreements. These provisions require Defendants to: (i) "promptly notify Client in writing of any functional issues with or damage to the Miners, with a description of any repairs that are anticipated to be necessary to bring the Miner to appropriate functionality" (Agreement § 2(d)), and (ii) obtain pre-authorization from Plaintiffs prior to sending Miners for repairs (*id.* § 2(f)).

82. To date, and despite Plaintiffs' repeated requests, Defendants have refused to provide Plaintiffs with: (1) the results of their purported "investigation" into the missing Miners; (2) copies of any insurance claims, or (3) copies of any police reports.

**F.** **Plaintiffs Discover That an Additional 781 S-Series Miners Are Missing from Defendant MMLLC's Oswego Facility.**

83.     On March 24, 2022, having now realized the inadequacy of Defendants' operations at the RP and Plattsburgh Facilities, Plaintiffs directed certain of their personnel to also conduct an in-person audit of Plaintiffs' Miners at the Oswego facility.

84.     Plaintiffs notified Defendant Maranda that their staff was coming to the Oswego facility to conduct the audit less than 24 hours prior to their scheduled visit.

85.     Despite having sent a total of 1,080 S-Series Miners to the Oswego facility, Plaintiffs' personnel identified only 299 of their Miners at the facility during their March 24 audit.

86.     Plaintiffs immediately notified Defendant Maranda that 781 of their S-Series Miners were missing from the Oswego facility.

87.     Defendant Maranda claimed during a telephone call with Plaintiffs' personnel that the Miners had gone missing the night before the audit. Moreover, in emails dated March 24 and March 30, 2022, Defendant Maranda admitted that a total of over 2,800 Miners were missing.  He further claimed that: (1) some of Plaintiffs' M-Series Miners had been sent for repair and not returned; (2) fewer Miners had been delivered to facilities under Defendants' control than Defendant Maranda had originally confirmed to Plaintiffs at the time of their shipment; and (3) some of Plaintiffs' Miners were stolen by others. Defendant Maranda has yet to provide evidence to Plaintiffs supporting any of these implausible claims.

88.     Defendant Maranda in his March 24 and March 30 emails further claimed that he: (1) asked his counsel to review the matter and work with law enforcement to try to locate the Miners; (2) was preparing police reports which he would share with Plaintiffs; (3) was preparing to file an insurance claim to report the apparent theft of Plaintiffs' Miners; and (4) was going to conduct an investigation into the missing Miners which would include reviewing "all camera

14

footage from [the] sites owners and any tenant security footage incoming for review today & tomorrow." Moreover, despite learning from Balan no later than March 7, 2022 about the disappearance of the 624 S-Series Miners from the RP facility, Defendant Maranda in his March 24 and 30 emails again failed to inform Plaintiffs of their disappearance, in continued violation of his obligation to do so under the operative Agreement.

**G.      Defendants Refuse to Provide Plaintiffs with Any Requested Materials Related to the Theft of their Miners**

89.      In the weeks following Defendant Maranda's March 24 and 30 emails, Plaintiffs and their counsel repeatedly requested that Defendants provide Plaintiffs with police reports and insurance claims that Defendant Maranda purported to have filed concerning Plaintiffs' missing Miners.  Despite Plaintiffs' numerous requests, and despite Defendants and their counsel having advised that police reports and insurance claims were, in fact, filed, Defendants have without justification refused to provide Plaintiffs with the requested documents.

90.      Upon information and belief, neither Defendant Maranda nor Defendant MMLLC, either directly or through counsel, have filed appropriate police reports or insurance claims relating to Plaintiffs' missing Miners.  Defendants', and Defendants' counsel's, false claims relating to these actions are part and parcel of Defendants' coordinated efforts to conceal their intentional participation in the conversion of Plaintiffs' Miners, as well as hide the present location of the Miners.

**H.      Plaintiffs Discover that an Additional 624 S-Series Miners Have Been Missing for Weeks and that Defendant Maranda Failed to Disclose Their Theft.**

91.      On April 5, 2022, Plaintiffs for the first time discovered that 624 of their S-Series Miners had disappeared from the RP facility.

INDEX NO. 2022-749
Case 1:22-cv-23362-KMW Document 17-1 Entered on FLSD Docket 03/13/2023 Page 111 of 121

92.     Specifically, on April 5, 2022, one of Plaintiffs' employees noticed that a photograph dated March 1, 2022 of the repair room at the RP facility showed approximately 624 of Plaintiffs' new, unboxed S-Series Miners sitting on a pallet.

93.     In a photograph of the same repair room at the RP facility taken by Plaintiffs' personnel on March 30, 2022, however, Plaintiffs' S-Series Miners had disappeared.

94.     Upon observing on April 5 that Plaintiffs' S-Series Miners were missing from the March 30 photograph, Plaintiffs' employee called Balan to inquire about the S-Series Miners' whereabouts.

95.     During that call, Balan stated what he had observed on March 4 and March 7, 2022—namely, that Balan had observed Plaintiffs' S-Series Miners in the repair room at the end of the day on Friday, March 4; that he did not see them in the repair room on the morning of Monday, March 7; and that he notified Defendant Maranda of the missing Miners that same day (March 7).

96.     During that call, Balan further claimed that neither he nor any member of his staff had moved the 624 S-Series Miners, and that the Miners had not yet been located (as of the date of the call, April 5).

97.     Upon information and belief, to date, Defendants have also not filed a police report or insurance claim concerning the disappearance of Plaintiffs' S-Series Miners.

**I.     Defendants Have Converted 3,692 of Plaintiffs' Miners.**

98.     Including the 2,287 M-Series Miners missing from the RP facility, the 781 S-Series Miners missing from the Oswego facility, and the more recently-discovered 624 S-Series Miners missing from the RP facility, Plaintiffs are missing a total of 3,692 Miners from facilities under Defendants' control.

99. Plaintiffs' missing Miners are worth at least approximately $22,000,000. Additionally, Plaintiffs have incurred at least approximately $9,000,000 in lost income as a direct result of being unable to use the missing Miners to mine Bitcoin since their disappearance from facilities under the Defendants' control.

100. Defendant Maranda, as the CEO and principal of his business, Defendant MMLLC, had full knowledge of the lack of security at the facilities; full physical access to Plaintiffs' Miners; and full knowledge of the Miners' arrival at the facilities, their value, and their whereabouts.

101. Given Defendant Maranda's knowledge, information and access to Plaintiffs' Miners—which was greater than any other party—he was well-positioned to convert them. Under Defendant Maranda's watch and control, Plaintiffs' Miners are gone.

102. Defendants' ongoing efforts to, among other things: hide the disappearance of Plaintiffs' Miners; provide inconsistent and baseless explanations for where the Miners are and how many are missing; withhold cooperation in Plaintiffs' efforts to locate the missing Miners, considered in tandem with Defendant Maranda's prior conduct evidencing a similar *modus operandi* (discussed immediately below), evidence Defendants' intentional participation in the conversion of the Miners.

**J.      Plaintiffs Learn of Defendant Maranda's History of Similar Acts**

103. Plaintiffs recently discovered that Defendant Maranda has a long history of illegal business practices, including involvement in the very same conduct at issue here—namely, the conversion of large numbers of cryptocurrency Miners.

104. For example, Plaintiffs recently discovered that Defendant Maranda was named as a defendant in a pending lawsuit in New York Supreme Court for Greene County in which he was accused of unlawfully transferring to third parties 3,600 Bitcoin Miners, unbeknownst to the

17

Case 1:22-cv-23362-KMW Document 17-1 Entered on FLSD Docket 03/13/2023 Page 113 of 121

machine owners, from a facility in Coxsackie, New York. Maranda is also a party to other federal and state litigations concerning his various cryptocurrency businesses.

105.    In addition, Maranda has previously pleaded guilty to several state and federal crimes, including in a New York State criminal matter for attempting to operate an unregistered vehicle dismantler business; in the United States District Court for the Eastern District of New York ("EDNY") for conspiring to possess and distribute over 100 marijuana plants, for which he was sentenced on August 14, 2014 to one year and one day imprisonment and three years of supervised release; and in the EDNY for transporting and selling endangered fish and reptiles, for which he was sentenced on May 1, 2007 to four years of probation.

### K.    Defendants' Conduct in New York and Failure to Make Adequate Progress on the Maine Facility Justifies Cancellation of the New York and Maine Agreements and Repayment of Fees for the Maine Project.

106.    In November 2021, prior to Plaintiffs' discovery that thousands of its Miners had gone missing from the facilities, Plaintiffs and Defendant MMLLC entered into a Master Services Agreement ("MSA") and a Service Level Specification ("SLS") (collectively, the "Maine Agreements"), pursuant to which Defendant MMLLC undertook to (1) build and then supervise a mining hosting facility in Millinocket, Maine; (2) obtain permits for the site; and (3) obtain a power contract for the site.

107.    Pursuant to the Maine Agreements, Plaintiffs have paid Defendant MMLLC a total of $250,000 towards supervision fees related to the project and $1,915,000 to fund a contract with Lincoln Infrastructure to begin facility planning and initial construction of the facility.

108.    Plaintiffs also agreed to pay Defendant MMLLC $0.006 per month for each kilowatt of electricity delivered to the site.

109.    Defendant Maranda, acting at all times as the principal member of Defendant MMLLC, promised to have the first of the Maine sites operational and ready to receive Plaintiffs' Miners for hosting by June 1, 2022.

110.    Despite Plaintiffs' payments and the agreed-upon operational date of June 1, 2022, there has been little tangible progress on the development of the site.

111.    In addition, Defendants have still not procured a power contract for the site, and the construction contractor has furnished very few of the promised deliverables.

112.    Defendants, through their lack of progress on the Maine facility and failure to meet their contractual promises at the three New York sites, including the loss of (and, on information and belief, intentional participation in the conversion of) over 3,692 Miners, have plainly demonstrated their inability to adequately host and safeguard Plaintiffs' Miners.

113.    Accordingly, Plaintiffs seek a refund of the amounts paid to Defendants for the supervisory services Defendants were supposed to provide pursuant to the Maine Agreements.

114.    In addition, Plaintiffs seek a refund of the amounts paid to Defendants that, pursuant to the Maine Agreements, were to be paid to the construction company Lincoln Infrastructure to complete the Maine facility construction, so long as those payments have not yet been paid to Lincoln Infrastructure.

115.    Plaintiffs also seek a declaratory judgment that Defendants anticipatorily breached the Maine Agreements, and that Plaintiffs are excused from any future performance.

### First Claim for Relief Against Defendants
#### (Breach of New York Contracts)

116.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 115.

117. The Mining Hosting Services Agreements were valid contracts between Plaintiffs and Defendant MMLLC that were executed by Defendant Maranda in his representative capacity as the principal and managing member of Defendant MMLLC.

118. Plaintiffs performed their obligations under the Mining Hosting Services Agreements, which included delivering Miners to Defendants' mining facilities and paying the required advanced deposits.

119. Defendants violated several of their obligations under the Agreements.

120. First, Defendants failed to provide the contractually agreed-upon (and necessary) electrical power at the RP facility in October 2021, resulting in Plaintiffs having to request that Defendants return 1,100 of its Miners to Plaintiffs, of which Defendants have returned 924. This also constitutes a violation of Section 2(c) of the Plattsburgh/RP Agreement, as these Miners were not racked and plugged in within one day of delivery to the RP facility.

121. Defendants similarly failed to rack and plug in thousands of Plaintiffs' Miners at the RP, Plattsburgh and Oswego facilities within one day of their delivery to the facilities, as is required under Section 2(c) of the Agreements. These Miners were never made operational, as is required under the Agreements, and have now disappeared from facilities under Defendants' control. If, as Defendant Maranda claims, a certain number of these Miners were sent for "repair" (though he has provided no evidence to support this assertion), then Defendants also failed to obtain pre-approval prior to sending the Miners out for repair, as required under Sections 2(d) and (f) of the Agreements.

122. Defendants also failed to provide "commercially reasonable security" at their facilities that house tens of millions of dollars' worth of Plaintiffs' sensitive mining equipment, as required under Section 2(c) of the Agreements. In blatant dereliction of their obligations,

20

Case 1:22-cv-23362-KMW   Document 17-1   Entered on FLSD Docket 03/13/2023   Page 116 of 121

Defendants provided for no security guards, few, if any, working surveillance cameras, and otherwise failed to provide commercially reasonable security given the value of the goods at issue. Defendants' failure to provide, at a minimum, security guards, escorts for contractors, and/or adequate video surveillance constitutes a material violation of their obligation under the Agreements.

123. Defendants also breached their contractual obligations by failing to notify Plaintiffs that any (let alone over 3,000) of their Miners were missing——an "oversight" that would not have occurred had Defendants performed their contractually-obligated duty to (1) "monitor[] the functionality of the Miners on a continuing basis" (Agreement § 2(d)); (2) "promptly notify [Plaintiffs] in writing of any functional issues with . . . the Miners . . ." (*id*.); and (3) "promptly notify [Plaintiffs if there was an] interruption of service" (*id*. § 2(c)). Instead, Plaintiffs had to discover for themselves that their Miners were missing.

124. Defendant MMLLC, acting at all times by and through Defendant Maranda, therefore, materially breached multiple obligations owed to Plaintiffs under the Mining Hosting Services Agreements.

125. As a result of Defendants' breach, Plaintiffs are owed damages in an amount to be determined at trial.

126. Plaintiffs are owed no less than the value of Plaintiffs' Miners that have disappeared from facilities under Defendants' control.

127. Plaintiffs are further owed no less than the lost profits incurred as a result of being unable to use the Miners during the period after which the Miners were delivered to Defendants' facilities and subsequently removed and/or not made operational.

**Second Claim for Relief Against Defendants**
**(Anticipatory Breach of Maine Contracts)**

128. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 127.

129. Defendants' complete and absolute failure to make any progress in preparing the Maine facility pursuant to the agreed-upon timetable is a definitive act demonstrating that Defendants are unable to perform their obligations under the Maine Agreements.

130. In addition, Defendants' failure to safeguard the thousands of Miners Plaintiffs delivered to Defendants' hosting facilities in New York demonstrate Defendants' inability to provide a secure hosting facility for such valuable equipment. Plaintiffs have thus, for good reason, lost confidence and trust that Defendants will be able to fulfill their obligations under the Maine Agreements.

131. Plaintiffs therefore seek a declaratory judgment that Defendants have anticipatorily breached the Maine Agreements and that Plaintiffs' performance under these contracts is excused, including without limitation, their obligation to pay supervisory fees and $0.006 override on power used at the site.

132. In addition, Plaintiffs seek a refund of payments totaling at least $2,000,000 for supervisory services and construction costs, less any payments that have been paid to construction company Lincoln Infrastructure.

**Third Claim for Relief Against Defendant Maranda**
**(Conversion)**

133. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 132.

134. Plaintiffs own and have a right to possess their Miners that were sent to facilities under Defendants' control in Rouses Point, Plattsburgh, and Oswego.

135. Defendant Maranda confirmed to Plaintiffs that he took possession of the Miners upon delivery at facilities under his control.

22

Case 1:22-cv-23362-KMW Document 17-1 Entered on FLSD Docket 03/13/2023 Page 118 of 121

136.    While the Miners were in Defendant's possession and under his supervision and control, approximately 3,692 of Plaintiffs' Miners vanished.

137.    Defendant Maranda failed to notify Plaintiffs that *any* of their Miners were missing, let alone over 3,000 of them, notwithstanding that he at all relevant times knew full well that thousands of Miners, worth tens of millions of dollars, were unaccounted for.

138.    Defendant Maranda refused to return the Miners, or to reveal their location(s), despite Plaintiffs' repeated requests that he do so. To the contrary, Defendant Maranda concealed the fact that the Miners were missing and, once Plaintiffs unilaterally discovered their disappearance, obstructed Plaintiffs' efforts to locate them.

139.    Defendant Maranda provided a litany of unfounded and apparently fabricated excuses for the disappearance of the Miners, including that they (1) were sent for repairs and never returned; (2) were stolen by others; and (3) never arrived at his facilities (despite his own prior confirmations to the contrary).

140.    Based upon, among other things, Defendant Maranda's persistent failure to notify Plaintiffs that their Miners were missing despite his knowledge of that fact; his implausible explanations about the Miners' whereabouts; his failure to provide police reports or insurance claims; his failure to return the Miners to Plaintiffs or provide any information as to their whereabouts; and his history of engaging in the very same scheme with similar *modus operandi*, and other illegal business practices, upon information and belief, Defendant Maranda converted or participated in the conversion of Plaintiffs' Miners.

141.    Defendant Maranda was uniquely positioned to convert or participate in the conversion of Plaintiffs' Miners. Defendant Maranda had full knowledge of the lack of security at

23

facilities under his control, full knowledge of the arrival of the Miners, full physical access to them, and knowledge of their value.

142.    As a result of Defendant's conversion of Plaintiffs' Miners, Plaintiffs are owed, and have suffered, damages in an amount to be determined at trial.

143.    Plaintiffs are owed no less than the value of Plaintiffs' Miners that Defendant Maranda refuses to return to Plaintiffs.

144.    Plaintiffs are further owed no less than the lost profits incurred as a result of being unable to use the Miners during the period after which the Miners were delivered to Defendant's facilities and subsequently stolen.

### Fourth Claim for Relief Against Defendants
### (Replevin)

145.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 144.

146.    Plaintiffs own and have a right to possess their Miners that were sent to facilities under Defendants' control in Rouses Point, Plattsburgh, and Oswego.

147.    Defendants are in possession of Plaintiffs' Miners.

148.    Defendants are also in possession of the deposits that Plaintiffs paid to Defendants, pursuant to the Mining Hosting Services Agreements. These deposits were to be used solely to pay electrical costs associated with the operation of Plaintiffs' Miners.

149.    Plaintiffs have a superior possessory interest to: (1) their missing Miners; and (2) the deposits sent to Defendants.

150.    Plaintiffs are entitled to immediate recovery of their missing Miners and their deposits.

### Fifth Claim for Relief Against Defendant Maranda
### (Piercing the Corporate Veil)

151.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 150.

24

152.     Defendant Maranda is the principal and managing member of Defendant MMLLC. In this role, Maranda exercised complete control and dominion over MMLLC by forming the entity, directing its business affairs, greatly influencing its operations, and entering into agreements on its behalf, including the Agreements at issue in this complaint.

153.     Under the cover of MMLLC, Defendant Maranda manipulated Plaintiffs into believing he managed a legitimate business enterprise that would and could honor the terms negotiated and memorialized in the Agreements. Instead, Maranda used his MMLLC to disguise his real intent, which was to conceal the whereabouts of Plaintiffs' Miners, unlawfully obtain money from Plaintiffs he never intended to repay, and permanently deprive Plaintiffs of the use of their Miners, thereby abusing the privilege of doing business in the LLC form.

154.     Maranda's acts resulted in injury to Plaintiffs. As a result of Maranda's actions, Plaintiffs have suffered the loss of their Miners, the loss of monies paid to Maranda for operation of their Miners and the building and supervision of the hosting facility in Maine, lost profits, and disruption of their businesses.

### **Prayer for Relief**

WHEREFORE, Plaintiffs request the following relief:

(a)     For the return of all of Plaintiffs' Miners or, in the alternative, entry of judgment against Defendants, awarding Plaintiffs damages in an amount to be determined at trial, but no less than approximately $29,000,000 together with pre-judgment interest and post-judgment interest, as applicable;

(b)     For punitive damages on all monetary damages Plaintiffs suffered;

(c)     For all sums Defendants have earned from operating Plaintiffs' Miners;

(d)     For all costs and expenses of collection for all unpaid Bitcoin payments, including but not limited to Plaintiffs' attorneys' fees;

(e)     For entry of a declaratory judgment that the Maine Agreements are breached and that Plaintiffs owe no further duties to Defendants under the Maine Agreements;

(f)     For entry of a judgment piercing the corporate veil of MMLLC and holding Maranda liable for its contractual breaches;

(g)     For all equitable relief this court deems proper under the laws of the state of New York; and

(h)     For all other relief as the Court deems just and proper.

Dated: May 10, 2022                    Respectfully submitted,

**PERKINS COIE LLP**

*/s/ David B. Massey*
David B. Massey
Rachel S. Mechanic
Ofunne Edoziem
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: (212) 261-6811
Fax: (212) 977-1649
  E-mail: DMassey@PerkinsCoie.com
            RMechanic@PerkinsCoie.com
            OEdoziem@PerkinsCoie.com

T. Markus Funk (*pro hac vice* forthcoming)
Norton Cutler (*pro hac vice* forthcoming)
Marcus Haggard (*pro hac vice* forthcoming)
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: (303) 291-2300
Fax: (303) 291-2400
e-mail: MFunk@PerkinsCoie.com
           NCutler@PerkinsCoie.com
           MHaggard@PerkinsCoie.com

*Counsel for Plaintiffs BIT Intelligence, LLC and BIT Intelligence Ltd.*

26