UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-23362-WILLIAMS/REID

WEIZMAN FL PROPERTIES, LLC,

    Plaintiff,

v.

MICHAEL MARANDA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO QUASH SERVICE AND SET ASIDE CLERK'S DEFAULT

This cause is before the Court on Defendant, Michael Maranda's, Motion to Quash Service of Process and Set Aside Clerk's Default (the "Motion"). [ECF No. 20]. This cause was referred to the Undersigned by the Honorable Kathleen M. Williams for a Report and Recommendation. [ECF No. 21]. For the reasons addressed below it is **RECOMMENDED** that the Motion [ECF No. 20] be **GRANTED.** In addition, it is **RECOMMENDED** that Plaintiff's Motion for Final Default Judgment [ECF No. 17] be **DENIED AS MOOT.**

### BACKGROUND

This is a diversity action for breach of contract, fraud, conversion, and civil theft under Florida Statute Section 772.11 revolving around a failed real estate transaction where Defendant allegedly retained more than $500,000 of sale proceeds. [ECF No. 9]. Plaintiff filed an initial Complaint on October 14, 2022, [ECF No. 1] and filed the Amended Complaint on November 2, 2022. [ECF No. 9]. This Court granted Plaintiff's Motion for Extension of Time to Effectuate

1

Service of Process after Plaintiff failed to serve Defendant either in New York or Florida after multiple attempts. [ECF Nos. 12 at 1–3; 13].

Following that, Plaintiff decided to use the local sheriff to effectuate service in New York. *See* [ECF No. 14]. The Suffolk County Sheriff's Office ("SCSO") attempted to serve Defendant at his New York address multiple times between December of 2022 and January of 2023. [*Id.*] Notably, on December 22, 2022, Defendant called SCSO to inform them that he "moved out of state." [*Id.*] Despite Defendant's message, SCSO continued to attempt service at his New York address, and on January 19, 2023, served Defendant by affixing a copy of the Amended Complaint to the door and mailing it to the New York address pursuant to New York Civil Practice Law Section 308(4). [*Id.*]; [ECF No. 17 at 2].

Once Defendant's time to respond to the Amended Complaint passed, at this Court's instruction, the Clerk entered a default against him. [ECF No. 16]. A few days after Plaintiff moved for final default judgment, an attorney appeared on Defendant's behalf, and Defendant filed the instant Motion. [ECF Nos. 17; 19; 20].

## LEGAL STANDARD

Service of process must comply with Federal Rule of Civil Procedure 4. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). The plaintiff bears the burden of showing that it properly served the defendant under Rule 4 when the defendant challenges service of process. *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013).

A plaintiff can effectuate service of process against an individual defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state

where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under New York law, if the defendant cannot be personally served, a process server may "affix[] the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and . . . mail[] the summons to such person at his or her last known residence . . . ." N.Y. C.P.L.R. § 308(4) (McKinney 2022). A defendant's "usual place of abode" in this context is his or her actual home, which may be different from his or her last known residence. *See Feinstein v. Bergner*, 397 N.E.2d 1161, 1163–64 (N.Y. 1979); *Kalamadeen v. Singh*, 882 N.Y.S.2d 437, 439 (N.Y. App. Div. 2009). Further, a defendant's subsequent notice of the lawsuit through other means does not cure defective service. *Feinstein*, 397 N.E.2d at 1164; *see Pardazi*, 896 F.2d at 1317.

Courts have "considerable discretion" in deciding whether to set aside a default. *In re Fortner*, No. 12-60478-CIV, 2012 WL 3613879, at *7 (S.D. Fla. Aug. 21, 2012) (citing *Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984)). Default judgments are disfavored because of the strong policy of determining cases on their merits. *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993); *see also In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (noting the Eleventh Circuit's "strong policy of determining cases on their merits … [and] therefore, view defaults with disfavor"). In line with the policy of deciding cases on the merits, a party seeking to vacate a default must only make "a bare minimum showing" to support its claim for relief. *In re Fortner*, 2012 WL 3613879, at *7 (quoting *Jones v. Harell*, 858 F.2d 667, 669 (11th Cir. 1988)).

Federal Rule of Civil Procedure 55(c) provides that the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Good cause" is considered a "mutable" and "liberal" standard which "var[ies] from situation to situation" based on the facts of a given case.

3

*Compania Interamericana Ex.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). The good cause standard is less rigorous than the standard used for setting aside a default judgment. *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990). As good cause cannot be reduced to a precise formula, courts consider multiple factors to determine whether good cause exists to set aside a default. *Compania Interamericana*, 88 F.3d at 951. These factors include whether: (1) the default was culpable or willful; (2) setting aside the default would prejudice the opposing party; (3) the defaulting party presents a meritorious defense; (4) the public interest implicated; (5) there was significant financial loss to the defaulting party; and (7) the defaulting party acted promptly to correct the default. *Id.* Courts need not consider every factor. *Id.*

## DISCUSSION

### I. Plaintiff's Service of Process was Ineffective on January 19, 2023

Defendant argues that the SCSO's "nail and mail" service of process on January 19, 2023, was ineffective, and therefore this Court should quash service of process. [ECF No. 20 at 4–5]. Specifically, Defendant contends that SCSO knew Defendant no longer resided at the New York address because its affidavit acknowledges that Defendant informed SCSO of his move on December 22, 2022. [ECF No. 14]. Further, Defendant puts forth that he moved to Miami, Florida, in November of 2022 via his own affidavit and a lease for a Miami apartment, and therefore never received the Amended Complaint and Summons served on January 19, 2023. [ECF No. 23 at 8–9; 23-1; 23-2]. In addition, Defendant notes that his property at the New York address is currently available for rent on AirBnb and is listed for sale. [ECF No. 23-1 at 3].

Plaintiff counters that SCSO's service of process on January 19, 2023, was effective. [ECF No. 22]. Plaintiff argues it could rely on Defendant's New York address to effectuate valid service

4

because: (1) Defendant used that address for the parties' real estate transaction on multiple documents on May 13, 2022; (2) Defendant's driver's license (issued January 27, 2022) uses the New York address; (3) Defendant's voter registration, phone number, and vehicle records use the New York address; and (4) Defendant recited the New York address as his own in a deposition for separate litigation in New York (although he also stated he was in Florida during the deposition). [*Id.* at 5; ECF Nos. 22-1; 22-5].

In relying on this information, Plaintiff misunderstands the distinction under New York law between "usual place of abode" and "last known address." In *Kalamadeen*, during the process server's fourth attempt to effectuate service using the defendant's address listed in his DMV records, he was told by the premises owner that the defendant had moved from that address several months earlier. 882 N.Y.S.2d at 439. Despite this, the process server affixed the summons and complaint to the door of that address, and then mailed the summons and complaint to that address. *Id.* The court found that the process server improperly affixed the summons and complaint to the door of the defendant's last known address knowing the defendant no longer resided there. *Id.* Therefore, service was improper. *Id.*; *see* N.Y. C.P.L.R. § 308(4).

Here, SCSO was aware on December 22, 2022, that Defendant no longer resided at the New York address because Defendant informed SCSO himself that he moved out of state. *See* [ECF No. 14]. Thus, when SCSO delivered the summons and Amended Complaint by attaching it to the door of the New York address on January 19, 2023, it did so knowing it was Defendant's "last known residence" and not his "usual place of abode." N.Y. C.P.L.R. § 308(4); *Kalamadeen*, 882 N.Y.S.2d at 439; [*Id.*] Consequently, the SCSO's attempt at service on January 19, 2023, was improper and ineffective. N.Y. C.P.L.R. § 308(4); Fed. R. Civ. P. 4(e)(1). Because Plaintiff did not properly serve Defendant, and there are no facts to indicate that Defendant waived or

5

intentionally avoided service. Accordingly, Defendant's Motion to Quash Service should be granted, and Plaintiff should be provided additional time to effectuate proper service.

## II. Defendant has Shown Good Cause to Set Aside the Entry of Default

### A. Culpability or Willfulness of Default

"[A] party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings . . . ." *Compania Interamericana*, 88 F.3d at 951–52. Defendant argues that his default was not intentional because he was never served with the summons and Amended Complaint. [ECF No. 20 at 3, 6–7]. Plaintiff contends that Defendant's failure to respond to the Amended Complaint was culpable or willful because he was properly served and had ample time to respond. [ECF No. 22 at 9]. However, this Court has concluded that service of process was never effectively completed. As such, this factor weighs in Defendant's favor. *See Thomas v. Derryberry*, No. 16–cv–3482–T–33AEP, 2017 WL 2448177, at *2 (M.D. Fla. June 6, 2017) (finding that ineffective service of process was grounds for setting aside clerk's entry of default).

### B. No Prejudice to Plaintiff

"In considering the prejudice factor, the relevant inquiry is not whether setting aside the default will 'deprive a plaintiff from a quick resolution of the case.'" *Morford v. Cattelan*, No. 21-CV-20039-SCOLA/GOODMAN, 2022 WL 1084733, at *5 (S.D. Fla. Mar. 22, 2022) (quoting *Tyco Fire & Sec. v. Alcocer*, No. 04–23127–CIV, 2009 WL 789657, at *3 (S.D. Fla. Mar. 23, 2009)). A court must instead consider if setting aside the default will have any effect on the plaintiff's ability to litigate the merits of the case. *Id.* Delay itself is not sufficient prejudice under Rule 55, but a plaintiff can show prejudice if "the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties." *Id.* (citations omitted).

Plaintiff asserts it will be prejudiced if the clerk's default is vacated because it will incur additional expenses in serving Defendant with the Amended Complaint and continuing to litigate. [*Id.*] Plaintiff does not mention any risk of loss of evidence, fraud, or difficulty with discovery. [*Id.*] Because additional costs caused by delay is not substantially prejudicial to Plaintiff, this factor weighs in favor of setting aside the default.

### C. Defendant's Meritorious Defenses

A defaulting defendant has a light burden to show that a defense is meritorious: he or she only has to show "a hint of a suggestion" of the merits. *Id.* at *6 (citations omitted). This burden does not require the defendant to show the likelihood of success because the court's inquiry is limited at this stage. *Id.* (citations omitted). Here, Defendant argues that he did not intentionally mislead Plaintiff about any liens against the commercial property in their negotiations. [ECF No. 20 at 3]. Rather, he mistakenly believed that he had effectively canceled the first contract. [*Id.*] Further, Defendant states he later informed Plaintiff of the lien and pending state lawsuit for specific performance of the prior contract after he became aware of it. [*Id.*] These are colorable defenses against Plaintiff's claims, and therefore Defendant has satisfied his minimal burden here. *Id.* This factor weighs in Defendant's favor.

### D. Significant Financial Loss to Defendant

Plaintiff seeks $1,556,595.69 in treble damages for Defendant's allegedly wrongful retention of the sale proceeds Plaintiff paid for the property in the underlying real estate transaction. [ECF No. 17 at 6]. If Plaintiff secured a final default judgment of $1,556,595.69 in damages, that would clearly be a significant financial loss to Defendant. *See id.* at *7 (finding that damages of $690,000 were a significant financial loss for purposes of vacating an entry of default). Accordingly, this factor favors setting aside the entry of default.

### E.  Prompt Action by Defendant to Correct Default

Defendant promptly began looking for counsel upon learning of the entry of default against him. [ECF No. 20 at 4]. Defendant's attorney entered his appearance, and Defendant filed this Motion on March 17, 2023, just a little over a month after default was entered on February 13, 2023. [ECF Nos. 16; 19; 20]. Given this timeline, Defendant was reasonably prompt in acting to correct the default. *See id.* at *8 (finding that the defendant's filing of a motion to set aside default nineteen days after learning about the lawsuit was reasonably prompt); *Mike Smith Pontiac GMC, Inc.*, 896 F.2d at 529 (affirming the denial of the defendant's motion to set aside default because defense counsel did not file the motion until six months after default was entered). Additionally, Defendant stated his intent to litigate this case in the Motion. [ECF No. 20 at 7]. Therefore, this factor also weighs in Defendant's favor.

Defendant has shown good cause to vacate the default because all considered factors weigh in his favor: (1) there is no evidence of his culpability; (2) he acted promptly to correct the default; (3) he has meritorious defenses; (4) and he would suffer significant financial loss if Plaintiff secured a final default judgment. Further, Plaintiff has not sufficiently articulated any prejudice. Accordingly, the entry of default should be vacated so the parties can litigate the merits of Plaintiff's claims after Plaintiff effectuates proper service on Defendant.

### CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant, Michael Maranda's, Motion to Quash Service of Process and Set Aside Clerk's Default [ECF No. 20] be **GRANTED**; that the Clerk's entry of default [ECF No. 16] be **VACATED**; and Plaintiff's Motion for Final Default Judgment [ECF No. 17] be **DENIED AS MOOT.**

Objections to this Report may be filed with the district judge within **FOURTEEN** (14) days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 7th day of July, 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Kathleen M. Williams**; and

**All Counsel of Record**